532 P.2d 204
**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Richard Michael RAILEY, a/k/a Richard Armendariz, Defendant-Appellant.**

**No. 1541.**

Court of Appeals of New Mexico.

Feb. 12, 1975.

Paul L. Biderman, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., David McArthur, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendant was convicted of receiving stolen property in excess of $2,500.00, pursuant to § 40A–16–11, N.M.S.A.1953 (2d Repl. Vol. 6). Following judgment and sentence, defendant appeals; we reverse.

The defendant contends, among other things, that the trial court erroneously admitted evidence seized during a search of the defendant's dwelling in that the Zuni Tribal Court lacked the authority to issue the search warrant pursuant to which the evidence was seized. Since we dispose of the matter on this threshold issue, we decline to reach other, arguably valid, points raised by the defendant on appeal.

An armed robbery of Indian jewelry allegedly took place in Gallup, New Mexico, on November 21, 1973. On December 2, 1973, a judge of the Zuni Tribal Court signed a warrant for the search of the premises of Rena King, a member of the Zuni Tribe. A search followed which disclosed several items of jewelry later identified as being among the items stolen from Gallup in the theft of November 21. The defendant was not present at the King dwelling during the search.

A pre-trial motion by the defendant sought to suppress the evidence obtained during the search on the ground, among others, that there was no express authority in the Zuni Tribal Judge to issue the warrant. The state contends, and the trial court so ruled, that the Zuni Tribal Judge had jurisdiction to issue the search warrant for the King house because it was a Zuni dwelling on the Zuni reservation.

It is necessary to look to Zuni law to discover whether the power to issue warrants inheres in the office of the Zuni Tribal Judge. The parties to this action have filed by stipulation both the Constitution of the Zuni Tribe and the Zuni Tribal Law and Order Code of Offenses.

General jurisdiction of the Zuni Tribe over its affairs is proclaimed by Article I of the Zuni constitution:

"The jurisdiction of the Zuni Tribe, Zuni Indian Reservation exercised through the Zuni Tribal Council, the Executive Department and the Judicial Department, acting in accordance with this constitution and the ordinances adopted in accordance herewith, shall extend to all tribal lands included within the present boundaries of the Zuni Indian Reservation and to such other lands as may hereafter be added thereto, unless otherwise provided by law. This jurisdiction shall apply to and be for the benefit and protection of all Indians who now, or may in the future, reside on the Zuni Reservation. The name of this organization shall be the Zuni Tribe."

The Zuni constitution further contains a Bill of Rights [Article III], wherein appears the admonition that "The Zuni

Tribe, in exercising its powers of self-government, shall not:

. . . . . .

 b. Violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized; . . ."

This language parallels, where it does not directly quote, the Fourth Amendment of the United States Constitution and § 202 of the Indian Civil Rights Act [25 U.S.C. § 1302].

 The similarity of this language and the legislative history of the Indian Civil Rights Act establish that Congress intended this provision to limit tribal governments as the Fourth Amendment limits the federal government. Loncassion v. Leekity, 334 F.Supp. 370 (D.N.M.1971). Section 1302 is further negative in form and forbids certain tribal actions. It is not a positive or affirmative declaration, and in no way creates a power in the government, such as the power to issue search warrants. See Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F.Supp. 85 (D.Mont.1969).

 Article XIV of the Zuni constitution established the Judicial Department. Its only mention of powers or authority appears in Section 6:

 *"Sec. 6.* The duties, jurisdiction and procedures of the courts of the Zuni Tribe shall be more fully prescribed by appropriate ordinances which will constitute the tribal law and order code, enacted pursuant to Article VI, Section 1(k)."

Article VI, Section 1(k), in turn, provides:

 *"Section 1.* The Zuni Tribal Council, as the legislative body of the tribe, shall exercise the following authorities subject to any limitations imposed by statutes of the United States applicable to Indians or Indian tribes, and subject to all expressed restrictions contained in this constitution.

". . .

"k. To enact ordinances, subject to approval by the Secretary of the Interior, for the maintenance of peace and order on the Zuni Reservation; . . ."

The Zuni Tribal Law and Order Code, which flows from Article VI and vests the Tribal Court with authority through Article XIV, contains only the following reference to warrants:

 "A. 14. DISOBEDIENCE TO ORDERS OF THE COURT—It shall be an offense for any Indian to willfully disobey any lawful order, subpoena, *warrant,* or command duly signed, issued, made, or given by the Zuni Pueblo Court, or to obstruct, or interfere with in any manner, any duly authorized person attempting to carry out any lawful order, subpoena, *warrant,* or command so duly signed, issued, made, or given by the court. Penalty: 1–100 dollar fine; 1–30 days confinement; or both." [Emphasis added]

The foregoing section, like 25 U.S.C. § 1302 is a negative prohibition which in no way creates a power in the Tribal Court to issue warrants. Nowhere else in the Zuni Tribal Law and Order Code is there any mention of warrants.

 We conclude that, because there is nothing in either the Zuni constitution or the Zuni Tribal Law and Order Code which authorizes the Zuni Tribal Court to issue a search warrant, the evidence seized pursuant to such a warrant is inadmissible at trial in a New Mexico court. See Pruitt v. State, 123 Ga.App. 659, 182 S.E. 2d 142 (1971); State v. Carter, 8 Terry 147, 89 A.2d 131 (Del.Super.1952); see generally, 79 C.J.S. Searches and Seizures § 72 (1952) and cases cited in the 1974 cumulative pocket supplement. The motion

to suppress the evidence obtained during the search of the King premises should have been granted.

Accordingly, the judgment and sentence are set aside, and the defendant is granted a new trial.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.