GLENN GEORGE, Administrator of the Estate
of RANDY GENE GEORGE, Deceased, For
the Estate; GLENN GEORGE and MARY GEORGE

Plaintiffs-Appellants

vs.

THE NAVAJO INDIAN TRIBE; THE NAVAJO
POLICE DEPARTMENT; ALFRED YAZZIE;
HERBERT BEGAY; CALVIN YAZZIE; and
THE NAVAJO TRIBAL MAINTENANCE OFFICE

Defendants-Appellees

Decided on January 04, 1979

Martha Blue, Ward, Hufford & Blue, Flagstaff, Arizona, for Plaintiffs-
Appellants

Byron Caton, Tansey, Rosebrough, Roberts & Gerding, Farmington,
New Mexico, for Defendants-Appellees

Before NESWOOD, Acting Chief Justice, JOHN and WALTERS, Associate
Justices

JOHN, Associate Justice

I.

This case is on appeal from a judgment of the Window Rock
District Court, finding for the defendants in the above entitled wrong-
ful death action.

On or about July 5, 1974, the deceased was arrested in
Window Rock, Arizona on a charge of public drunkeness and in-
carcerated in the jail facilities located at Window Rock, Navajo Nation
(Arizona). On the morning of July 6, 1974 the deceased was discovered

hanging from the wires of the light fixture and was pronounced dead.

A complaint was filed on November 12, 1975 asking for $2,000,000 in damages. The defendants filed a Motion to Quash the jury panel in early 1977 on the grounds that all non-Indians were excluded and that it was a violation of the 1968 Indian Civil Rights Act (25 U.S.C. 1302) to do so. While District Court Judge Merwin Lynch originally ruled against them, he later, on his own motion, did include non-Indians on the jury.

During the course of the trial, the judge excluded two expert witnesses offered by the plaintiffs. Stanley Maskell was to have testified to the conditions and standard of care applicable to Arizona rural jail facilities, but was excluded on the grounds that he was not an expert on Navajo jail facilities. Albert Goldtooth was to have testified to the standard of care for handling juveniles and for inspecting and maintaining jail conditions, but was not allowed to testify as an expert because he only had an 11th grade education.

The District Court also denied admission into evidence of a memorandum prepared by Kimeric Hayner, then legal Advisor to the Navajo Police Department, on procedures for handling juveniles offenders.

During his closing argument, defendants' counsel briefly referred to the testimony of Stanley Maskell. This was quickly objected to by the opposing side as improper argument, as it referred to a

-2-

matter not in evidence. Defendants' counsel thereafter refrained from any such references.

The jury instructions given included one on agency law. While there is some confusion on the questions of whether the plaintiffs either properly submitted their own instruction or objected to the instruction given, it seems that the instruction they claimed they submitted differed from the one actually read to the jury.

The jury returned a verdict for the defendants and judgment was entered accordingly. Plaintiffs appealed.

II.

The issues before the Court are:

1. Whether the composition of the jury panel was contrary to the Navajo Tribal Code.

2. Whether the failure to allow the plaintiffs' two expert witnesses offered in the standard of care for juveniles and the standard of care for maintenance and other matters is reversible error.

3. Whether the ruling denying admission into evidence of the memorandum by Mr. Hayner regarding the established juvenile practices is reversible error.

4. Whether the closing argument of defendants' counsel was improper and prejudicial to the plaintiffs and is rever-

-3-

sible error.

5. Whether the District Court's refusal to give the requested instruction was reversible error.

III.

Title 7, Section 654 of the Navajo Tribal Code (1977 Compilation) states the eligibility of jurors as follows:

> "Any Navajo Indian over the age of 21 years of at least ordinary intelligence and not under judicial restraint shall be eligible to be a juror."
>
> (emphasis added)

7 NTC 654 was enacted in 1959 by Trial Council Resolution CJA-5-59. In 1968 the United States Congress passed the Indian Civil Rights Act codified as 25 U.S.C. 1302, which states in part:

> "No Indian Tribe in exercising powers of self-government shall ...
> (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law."

The case of Dodge v. Nakai, 298 F.Supp. 17 (DC., Ariz., 1969) made it clear that the law extends to any person, Indian or non-Indian.

-4-

In the cases of <u>Alexander v. Louisana</u>, 405 U.S. 625, 31 L.Ed.2d 536, 92 S.Ct. 1221 and <u>Carter v. Greene County</u>, 396 U.S. 320, 24 L.Ed.2d 549, 90 S.Ct. 518, among others, the United States Supreme Court recognized that to deny representation on a jury on the basis of race violated the provision of the 14th Amendment to the United States Constitution.

> "The exclusion of Negroes from jury service because of their race is 'practically a brand upon them...' That kind of discrimination contravenes the very idea of a jury "a body truly representative of the community'..."
>
> 24 L.Ed.2d at 558

> "The commissioners, in any event, had a duty 'not to pursue a course of conduct in the administration of their office which would operate to discriminate in the selection of jurors on racial grounds.' "
> (citations omitted)
>
> 31 L.Ed.2d at 543

While the Court recognizes the fact that the 14th Amendment does not apply to Indian Tribes, the restrictions of the 1968 Indian Civil Rights Act are esentially derived from the United States Constitution. See <u>Hennessy v. Dimmler</u>, 394 NYS2d 786 (1977, Co. Ct.); <u>State v. Railey</u>, 87 N.M. 275, 532 P.2d 204 (1975, N.M. App.)

This Court feels that the systematic exclusion of non-Indians from jury panels would violate 25 U.S.C. 1302 (8) in the

same manner as the case above. Because it is recognized that the language of this section is derived from similar provisions of the United States Constitution, we believe the intent of Congress was to prohibit denials of equal protection in this manner.

Therefore, we cannot sanction the provision of 7 N.T.C. 654 limiting jurors to Navajo Indians. 7 N.T.C. 654 is declared null and void insofar as it restricts jury service to only Navajos.

IV.

The qualifying of expert witnesses is one area of trial procedure which is left to the sound discretion of the trial judge. See Rules 23 and 24 of the Navajo Rules of Evidence.

There is no substitute for first hand observation and examination of the qualifications of such experts. The Court of Appeals must exercise considerable restraint in this area and must resist the temptation to jump in and substitute its own opinion for the opinion of the trial judge and reverse his judgment on this basis.

Given the justifiable reluctance on our part to outguess the District Court on matters of this nature, we must, however, exercise our power of review and determine whether there is some reasonable basis behind the judge's exclusion of the two witnesses offered as experts in this case. We find no such reasonable basis.

Mr. Maskell was excluded because he was not an expert on Navajo jail facilities. This Court believes that there are really few experts, if any, in this narrow field and none were readily available to the plaintiffs. The fact is that Mr. Maskell was an expert in Arizona rural jail facilities, and area that overlaps and parallels to a great extent the area of our own jail system. His testimony would have certainly been of some value and assistance to the jury in its determination of the standard of care that should be applicable to the Window Rock facility. We therefore believe it was an error to exclude his testimony.

Mr. Goldtooth was excluded as an expert witness apparently because he had only an 11th grade education. What type of formal education a person possesses certainly is relevant in any determination of his knowledge and skills. However, it is not the sole determinative factor. Self-education and experience can be just as important. Again, Mr. Goldtooth's testimony as an expert might have been of assistance to the jury, and it was error to exclude it.

Having found error in the exclusion of the above two expert witnesses, we must now decide whether this was reversible error. We find that it was not.

Extensive evidence was introduced as to the jail conditions and procedures at Window Rock, both in general and for the night when the deceased was incarcerated. All this was evidence the jury could use in determining the standard of care. While the testimony of

the two experts might have added to this fund of knowledge, we cannot, upon review of the subject matter of the testimony, conclude that a new trial would clearly result in a different verdict from that already reached. See Wedness v. Central States Fire Insurance Co., 259, 47 NW2d 879.

V.

We find that the exclusion of the memo by Mr. Hayner was not reversible error.

Mr. Hayner was at one time the legal advisor to the Navajo Police Department. He had no authority to dictate to the police what procedures to follow in handling juveniles. All he could do was to advise them of the law in the area. As police officers, they are already charged, under our system of justice, with such a knowledge.

Besides, on review of the evidence, it is not clear if this memo was posted at the time of the deceased's arrest or if it was otherwise known, or should have been known, by the defendant police officers.

VI.

Counsel, when making their closing arguments to the jury,

are expected to marshall the facts presented and use their utmost powers of persuasion to convince the jurors as to the soundness of their client's case. Anything less would be a violation of their ethical duty imposed by Cannon 7 of the Code of Professional Responsiblity ("A Lawyer should represent a Client Zealously within the Bounds of the Law").

What a lawyer is not permitted to do is make an inflamatory or prejudicial argument and thus improperly influence the jury. Upon review of defendants' counsel's closing remarks in this case, however, we cannot find any statements that even remotely approach this level of misconduct. One single reference to the testimony of an excluded witness, which was immediately objected to, is not enough to cause us to overturn the jury's verdict.

We therefore conclude that the closing argument of defendant's counsel was not reversible error.

VII.

The two jury instructions on agency to be examined here the one given and the one the plaintiffs claim should have been given are almost identical in wording but they contain a substantial and critical difference.

The instruction requested by the plaintiffs reads as follows:
"A person has notice of a fact if he or his agent

knows the fact, has reason to know it, should know it, or has been given a notification of it. Knowledge acquired by an agent during the agency and within its scope is imputed to the principal even though the knowledge so acquired by the agent is not actually conveyed to the principal."

The legal result can easily be reached, from reading the above instruction, that any information conveyed to the agent during the course of his activities, no matter under what circumstances and no matter what its content, is imputed to the principal. This is a far reaching and staggering theory. Police officers usually have numerous contacts with the public during their working day. Do the plaintiffs seriously suggest that the substance of all conversations and communications conveyed to an individual officer, no matter how seemingly irrelevant or of a non-serious nature at that moment, be chargeable to the knowledge of the Police Department as an entity? This Court does not believe that is a correct statement of the law.

The instruction that actually was given reads as follows:

"Generally, knowledge of the agent which he is under a duty to disclose to the principal or to another agent of the principal is imputed to the principal."

The key difference in the given instruction from the one plaintiffs requested is that it makes it clear that the only knowledge

imputed to the principal is that what the agent is under the duty to disclose.

We believe the instruction given correctly states the law on agency. We therefore conclude there was no error in the refusal to give the plaintiffs' requested instruction.

VIII.

For the reasons stated above, the judgment of the District Court, finding for the defendants, is AFFIRMED.

BLUEHOUSE, Associate Justice, concurs.

NESWOOD, Acting Chief Justice, Dissenting

I respectfully dissent. While I agree with Parts I-III, and Parts V-VII of the majority opinion, I disagree as to Part IV and to the ultimate judgment of this Court.

Expert witnesses are a vital part of most negligence actions because of the peculiar legal concept involved, "standard of care". When one fails to observe a standard of care in a particular situation, one is negligent. Put another way, negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the

existing circumstances would not have done. <u>Baltimore &. P.R. Co. v. Jones</u>, 95 U.S. 439, 24 L.Ed. 506 (1877), <u>Owl Drug Co. v. Crandall</u>, 52 Ariz. 322, 80 P.2d 952 (1938), <u>Stewart v. Smith</u>, 68 Ariz. 91, 200 P.2d 353 (1948).

The key words in the above definition are, "under the circumstances." One cannot determine what a reasonable person would do under certain circumstances, unless one has a basis of comparison.

The testimony of the expert witnesses in this case was for the purpose of forming such a comparison. It was a vital part of the plaintiffs' case. Without a basis of comparison with other jails and procedures, I don't see how the jurors could have formed an opinion as to the standard of care for the jail facility in question.

I would therefore REVERSE the judgment of the District Court.