## STATE V. SERNA

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**WILLIAM SERNA,**
**Defendant-Appellant.**

Docket No. A-1-CA-34926
COURT OF APPEALS OF NEW MEXICO
May 28, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Christina P. Argyres, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Maha Khoury, Assistant Attorney General, Santa Fe, NM for Appellee

Bennett J. Baur, Chief Public Defender, Kimberly Chavez Cook, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

BRIANA H. ZAMORA, Judge. I CONCUR:  LINDA M. VANZI, Judge. KRISTINA BOGARDUS, Judge (specially concurring).

**AUTHOR:** BRIANA H. ZAMORA

**MEMORANDUM OPINION**

**B. ZAMORA, Judge.**

**{1}** Defendant William Serna appeals his convictions for possession of a controlled substance and conspiracy to commit possession of a controlled substance on the following grounds: (1) his right to be free from double jeopardy was violated; (2) there was insufficient evidence to support his convictions; (3) he was entitled to a jury instruction on a lesser-included offense; (4) he had ineffective assistance of counsel;

and (5) his right to a speedy trial was violated. Because we agree with Defendant that his conviction for conspiracy to commit possession of a controlled substance violated his right against double jeopardy, we reverse and remand for the district court to enter an order vacating this conviction. We otherwise affirm.

**BACKGROUND**

**{2}**     In August 2012 Officer Daniel Galvan was part of a "tactical plan" at the Albuquerque Rescue Mission, a shelter for homeless people. Officer Galvan and another officer were on the roof of the Rescue Mission that night watching for potential drug use and other possible crimes occurring on the sidewalk below. Although it was dark, the officers could see the sidewalk below because it was illuminated by floodlights. While the officers observed the sidewalk, an arrest team was in a patrol car parked down the street.

**{3}**     From his vantage point on the roof, Officer Galvan saw Defendant and Matthew Valdez approximately fifteen feet directly below his position, lying on the sidewalk on their sides and talking to one another. Nothing obstructed Officer Galvan's view of Defendant and Valdez, it was a clear night, and Officer Galvan was wearing his prescription glasses. While Officer Galvan was observing the two men, Defendant produced what Officer Galvan identified as a crack cocaine pipe, took out a lighter, and took "three hits" from it[1], flicking the pipe upwards so it was orientated vertically rather than horizontally, as one would smoke a cigarette. After Officer Galvan observed Defendant smoke from the pipe, he called the arrest team. Officer Galvan then observed Defendant pass the pipe to Valdez who also smoked from it and Valdez then concealed the pipe in a red pouch. Officer Galvan continued to observe Defendant, until the arrest team reached the scene, less than two minutes later.

**{4}**     When the arrest team approached, Valdez threw the red pouch to his feet and tried to kick it away. Officer Amy Markwick, an officer on the arrest team, searched the red pouch and discovered the pipe. Officer Markwick later gave the pipe to Officer Galvan so he could tag it into evidence. Officer Galvan removed a Brillo pad from the pipe, which is a copper wire mesh typically found in crack cocaine pipes and tagged it into evidence. The Brillo pad later tested positive for the presence of cocaine. Officer Markwick testified at trial that she could not recall if the arrest team recovered anything else on Defendant or Valdez. Officer Markwick further testified that she could not recall if there was anything else in the red pouch or whether she "inventoried it or not[,]" but if the pouch was inventoried and there were additional pipes they would also have been tagged into evidence.

**{5}**     Defendant was indicted on one count of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23 (2011), and one count of conspiracy to commit possession of a controlled substance, contrary to NMSA 1978, Section 30-28-2 (1979), and Section 30-31-23. The Friday before trial, Defendant filed a motion to

---

[1]Testimony from another officer indicated that a crack cocaine pipe does not usually have a bowl in most cases so the user has to light the pipe every single time they want to draw on it, otherwise it will not stay lit.

dismiss on speedy trial grounds, which was denied by the district court. Following the trial, the jury returned a guilty verdict for both felony counts.

## DISCUSSION

### I.      Double Jeopardy

**{6}**      Defendant argues that his convictions for possession of a controlled substance and conspiracy to commit possession of a controlled substance violate his right to be free from double jeopardy. Specifically, Defendant contends that his convictions under the two different statutes present a double-description double jeopardy claim because the State relied on the moment Defendant smoked the pipe with Valdez to prove both the possession and conspiracy to commit possession charges. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 51, 150 N.M. 232, 258 P.3d 1024 (holding that a double-description claim requires "first analyzing whether the conduct underlying the offense is unitary, i.e., whether the same conduct violates both statutes, and, if so, proceeding to analyze whether the [L]egislature intended to create separately punishable offenses" (internal quotation marks and citation omitted)).

**{7}**      The State agrees that Defendant's right to be free from double jeopardy was violated and his "conviction for conspiracy should be vacated." Although we are not bound by the State's concession, we agree. *See State v. Montoya*, 1993-NMCA-097, ¶ 28, 116 N.M. 297, 861 P.2d 978 (noting that this Court is not bound by state's concessions). In *State v. Silvas*, our Supreme Court noted that, to support a conviction for two different crimes, the state relied on evidence of a "single moment in time [(giving drugs to codefendant)] to prove *both* [the d]efendant's possession with intent [to distribute] and [the d]efendant's conspiratorial agreement with [the codefendant] to commit the same crime." 2015-NMSC-006, ¶ 10, 343 P.3d 616. Our Supreme Court concluded that this constituted unitary conduct and violated the defendant's right against double jeopardy. *Id.* ¶¶ 19-21. The same is true here. In its closing argument, "the State appears to have directed the jury to the same act for both crimes." *Id.* ¶ 18.

**{8}**      Accordingly, based on our review of the record, and the State's concession on this point, we find further analysis unnecessary and conclude Defendant's right to be free from double jeopardy was violated.

### II.      Sufficiency of the Evidence

**{9}**      Defendant claims that there was insufficient evidence to support his conviction for possession of a controlled substance. Defendant also argues there is insufficient evidence to support his conviction for conspiracy to possess a controlled substance. However, because we vacated the conspiracy conviction based on double jeopardy grounds, we need not address this argument.

### A.      We Decline to Overturn *Wood* and *Grijalva*

**{10}** Defendant argues that there was insufficient evidence that he possessed a controlled substance pursuant to Section 30-31-23 because the empty pipe contained only a trace amount of cocaine. Defendant's argument is contrary to existing precedent and would require us to overturn our decisions in *State v. Wood,* 1994-NMCA-060, 117 N.M. 682, 875 P.2d 1113 and *State v. Grijalva*, 1973-NMCA-061, 85 N.M. 127, 509 P.2d 894. In *Wood*, this Court held that less than 0.0001 gram of cocaine located in syringes was sufficient to uphold a conviction for possession of a controlled substance. 1994-NMCA-060, ¶¶ 2-3, 6-12.

**{11}** Defendant requests we overturn *Wood* and *Grijalva* because the legislative intent of Section 30-31-23 was not to punish people who possess paraphernalia containing only residue and such a holding "makes an absurd distinction between clean and dirty paraphernalia." Defendant adds that, "all misdemeanor paraphernalia cases would be transformed into drug possession cases by the mere fact that drug users had used their paraphernalia before[.]" The State responds that the legislative intent of the possession statute is to prevent consumption and here Officer Galvan observed Defendant consuming what the jury could have inferred was crack cocaine, the exact behavior the Legislature sought to prevent. Further, the State argues, the distinction between the possession of a controlled substance and possession of paraphernalia is not rendered absurd when applied to the facts of this case. We agree with the State.

**{12}** "Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law." *See Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305. Stare decisis is at the core of maintaining "a sound judicial system[.]" *Id.* Consequently, "any departure from precedent demands special justification." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 11, 127 N.M. 654, 986 P.2d 450 (alteration, omission, internal quotation marks, and citation omitted). In deciding whether to overturn precedent we look to:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Pieri*, 2009-NMSC-019, ¶ 21, 146 N.M. 155, 207 P.3d 1132 (internal quotation marks and citation omitted). Defendant states that his argument is premised both on the first factor, that the result of this precedent is unworkable, and the third factor, that *Wood* and *Grijalva* failed to undertake a sufficient analysis of legislative intent.

**{13}** Defendant does not present a compelling reason to overturn *Grijalva* and *Wood*. The legislative intent analysis from *Wood* was sufficient and the holding continues to remain workable. In conducting our analysis of legislative intent in *Wood*, we stated that

the "starting point in every case involving the construction of a statute is an examination of the language utilized by the drafters of the act." 1994-NMCA-060, ¶ 8. We noted that Subsection B of Section 30-31-23 "adopted differing penalties for possession of specific quantities of marijuana." *Wood*, 1994-NMCA-060, ¶ 8. In comparison, we read the language "any amount" of a "controlled substance" in Subsection C of Section 30-31-23 together with Subsection D, which also references "a controlled substance," and does not indicate a specific amount for a conviction. *Wood*, 1994-NMCA-060, ¶ 8. This notable difference in the subsections led to our conclusion that it was clear and unambiguous that the Legislature intended to punish with Section 30-31-23 "any clearly identifiable amount of a controlled substance[,]" interpreting the "any amount" language in Section 30-31-23(C) to also apply to Section 30-31-23(D).[2] *Wood*, 1994-NMCA-060, ¶ 9.

**{14}**    We fail to see how we could interpret the language in Section 30-31-23 differently. As we noted in *Wood*, "[t]he power to define crimes is a legislative function." *Id.* ¶ 11 (internal quotation marks and citation omitted). Moreover, "[t]he Legislature is presumed to act with knowledge of relevant case law" and because of this knowledge the Legislature can expressly choose to take "a different approach." *State v. Cleve*, 1999-NMSC-017, ¶ 14, 980 P.2d 23 (alteration, internal quotation marks, and citation omitted); *see Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624 ("[W]hen enacting a statute the [L]egislature is deemed to be aware of existing statutes and judicial decisions and to have amended or enacted the statute in light thereof."). We assume the Legislature is aware of our decisions interpreting Section 30-31-23 and, despite having amended the statute several times in the decades since our holding in *Grijalva*, has not amended the "any amount" language. The Legislature could have easily removed the word "any" from Section 30-31-23 had it disapproved of our interpretation of the statute, including during the 2019 legislative session where, despite amending Section 30-31-23, the Legislature again did not alter or omit the words "any amount." *See* S.B. 323, 54th Leg., 1st Sess. (N.M. 2019), *available at* https://nmlegis.gov/Sessions/19%20Regular/final /SB0323.pdf.

**{15}**    Moreover, Defendant has failed to show why the holding in *Wood* and *Grijalva* has become so "unworkable" that it is "intolerable." *See N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 14 (indicating that a proponent of overturning precedent on the grounds that it has become so unworkable as to be intolerable must provide a basis for concluding as such). Our Supreme Court has made clear that proof of mere possession of an item containing only a trace amount of cocaine is insufficient to support a conviction for possession of a controlled substance. *See State v. Reed*, 1998-NMSC-030, ¶ 15, 125 N.M. 552, 964 P.2d 113. Instead, the state must prove, among other elements, that the defendant had knowledge that he possessed a controlled substance. *See id.* ¶ 16 (reversing a defendant's conviction for possession when the defendant *did not know* that a cellophane cigarette wrapper he had in his pocket contained cocaine residue, the amount of cocaine in the wrapper was not apparent to the human eye, and the defendant did not flee or act in a suspicious manner). The facts in this case are

---

[2]This statute has been amended since our conclusions in Wood. As of the date of this opinion, Sections 30-31-23(C) and (D) are now effectively Sections 30-31-23(D) and (E).

illustrative of this point because not only was there evidence that Defendant possessed a pipe with cocaine residue, additionally the officer saw Defendant smoke from the crack pipe three times—evidence that Defendant was *knowingly* consuming the illicit drugs contained in the pipe. The knowledge requirement of the crime of possession of a controlled substance makes our precedent workable, as it ensures that a person is convicted only when there is evidence that they knowingly possessed a controlled substance.

**{16}** Finally, we also consider "whether [the] parties justifiably relied on the precedent so that reversing it would create an undue hardship[.]" *Pieri*, 2009-NMSC-019, ¶ 21 (internal quotation marks and citation omitted). For over forty-five years litigants have relied on the plain meaning of "any amount" in Section 30-31-23. Maintaining our holdings in *Grijalva* and *Wood* not only provides "stability of the law," but also "fairness in assuring that like cases are treated similarly[.]" *Trujillo*, 1998-NMSC-031, ¶ 33. Therefore, this is an inappropriate circumstance to depart from our judicial obligation to follow precedent. We continue to follow *Wood* and *Grijalva*, which we next apply to our analysis of Defendant's sufficiency of the evidence argument.

## B. There Was Sufficient Evidence That Defendant Possessed Crack Cocaine

**{17}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. The jury instructions given by the district court "become the law of the case against which the sufficiency of the evidence is measured." *State v. Schackow*, 2006-NMCA-123, ¶ 8, 140 N.M. 506, 143 P.3d 745.

**{18}** To find Defendant guilty of possession of a controlled substance, the State had to prove that Defendant knew the cocaine was "on his person or in his presence, and he exercise[d] control over it." UJI 14-3130 NMRA. "Two or more people can have possession of a substance at the same time . . . [and] a person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession." *Id.* This Court "must be able to articulate a reasonable analysis that the fact-finder might have used to determine knowledge and control." *State v. Jimenez*, 2017-NMCA-039, ¶ 48, 392 P.3d 668 (internal quotation marks and citation omitted). The State had to prove knowledge by demonstrating Defendant knew of the presence of the cocaine. *See State v. Garcia*, 2005-NMSC-017, ¶ 14, 138 N.M. 1, 116 P.3d 72. Evidence of control could include the power to produce or dispose of the cocaine. *State v. Barber*, 2004-NMSC-019, ¶ 27, 135 N.M. 621, 92 P.3d 633. The State could have established proof of possession by evidence of the conduct and actions of Defendant, and by circumstantial evidence connecting Defendant with the crime. *See id.*

**{19}** Defendant argues that his conviction is based on Officer Galvan speculating that he possessed a crack pipe as opposed to a cigarette. Moreover, Defendant contends the officers neglected to search the red pouch to verify whether there was a cigarette or other paraphernalia that would provide an alternative explanation as to what he was smoking. We disagree.

**{20}** At trial, Officer Galvan testified that he believed the object Defendant possessed was a crack cocaine pipe, not a cigarette or other paraphernalia. Officer Galvan described his training in identifying narcotics and methods of using narcotics, including crack and cocaine, stated that he was familiar with crack cocaine pipes, had come across approximately two hundred crack cocaine pipes in his time as a police officer, and had conducted investigations for possession of crack. Officer Galvan explained that, to smoke crack cocaine, the user points the pipe vertically, a technique that is distinct from smoking tobacco, marijuana, or methamphetamine. Officer Galvan's testimony that Defendant smoked from a crack cocaine pipe was based on his extensive training and experience, not speculation.

**{21}** The arresting officers arrived within two minutes after Officer Galvan's observations and retrieved the pipe from the red pouch. While waiting for the arrest team, Officer Galvan continuously watched Defendant and Valdez, and at trial, identified the same pipe the two were smoking. The State's expert in forensic drug analysis later confirmed that the Brillo pad that Officer Galvan removed from the pipe contained cocaine residue. As noted above, any clearly identifiable amount of a controlled substance is enough to sustain a conviction for possession of a controlled substance. *See Wood*, 1994-NMCA-060, ¶ 10. As the State points out, Defendant repeatedly smoked from the crack cocaine pipe in a manner that a user would traditionally smoke crack cocaine and then passed the pipe to another individual who again smoked from it. It is a reasonable inference to assume that the two individuals would not have smoked an empty crack cocaine pipe numerous times, evidencing that the jury could have found that Defendant possessed more than just a pipe with residue. Thus, the pipe with cocaine residue coupled with evidence of Defendant smoking from the crack pipe was sufficient for the jury to reasonably infer he knowingly possessed cocaine. Defendant's arguments relate to the weight and credibility given to the testimony of witnesses—a matter that is directly within the province of the jury which was free to reject Defendant's contentions. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 45, 150 N.M. 654, 265 P.3d 705 (stating that "contrary evidence offered by [the d]efendant does not warrant a reversal because the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted). Based on these facts, the jury could have reasonably inferred Defendant knew the substance was cocaine and exercised control over it.

### III. Failure to Instruct Jury on Lesser-Included Offense Was Not Fundamental Error

**{22}** Defendant argues that the district court committed fundamental error and violated his right to due process because it did not sua sponte instruct the jury on the lesser-

included offense of possession of drug paraphernalia. Defendant acknowledges that he did not request the lesser-included instruction or object to the instructions given below.

**{23}** We apply "the doctrine of fundamental error to an error in the jury instructions that was not objected to, or raised in the district court." *State v. Traeger*, 2001-NMSC-022, ¶ 18, 130 N.M. 618, 29 P.3d 518. In analyzing a fundamental error claim, we begin our analysis by determining whether an error occurred. *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. Assuming there was error, we will only reverse Defendant's conviction "if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted).

**{24}** Defendant relies mainly on *State v. Darkis*, 2000-NMCA-085, 129 N.M. 547, 10 P.3d 871 in support of his position. In *Darkis*, this Court concluded it was reversible error for the district court to reject the defendant's request for a jury instruction on the lesser-included offense of possession of paraphernalia where he was charged with possession of a controlled substance. *Id.* ¶ 12. We noted that it was a valid trial strategy for the defendant "to allow the jury the ability to make a choice, that is, as between a lesser and a greater charge." *Id.* ¶ 20. Defendant's reliance is misplaced. First, the standard of review in *Darkis* was reversible error, not the higher standard of fundamental error we apply in this case because of Defendant's failure to request the instruction. *See State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (noting the difference between fundamental error and reversible error and declaring there is a "heightened scrutiny" in a fundamental error analysis). Second, in *Darkis*, defense counsel explicitly requested the lesser-included instruction of drug paraphernalia. 2000-NMCA-085, ¶ 5.

**{25}** In closing argument, Defendant's counsel attacked the motives and perception of Officer Galvan and highlighted the fact that the arresting officers found the pipe on Valdez, who was the only one who exhibited characteristics consistent with crack use. Defendant's counsel, by not requesting an instruction of the lesser charge could have made a tactical decision to pursue an "all-or-nothing" trial strategy. "On appeal, we do not second-guess the tactical decisions of the litigants." *State v. Villa*, 2004-NMSC-031, ¶ 14, 136 N.M. 367, 98 P.3d 1017; *see State v. Boeglin*, 1987-NMSC-002, ¶ 10, 105 N.M. 247, 731 P.2d 943 (holding that our Supreme Court has "consistently . . . imposed" upon a defendant the duty to make the "tactical decision" to seek jury instructions on a lesser-included offense). Moreover, we presume the jury instructions were consistent with Defendant's trial strategy, because, after reviewing them, Defendant's counsel affirmatively agreed with the proposed instructions. "New Mexico courts have repeatedly held that the defendant cannot be heard to complain if the trial court instructed the jury as he desired." *State v. Hamilton*, 1988-NMCA-023, ¶ 15, 107 N.M. 186, 754 P.2d 857; *see State v. Lopez*, 1972-NMCA-158, ¶ 11, 84 N.M. 453, 504 P.2d 1086 (stating that it was the duty of counsel for the defendants to ask the court to give their requested instructions). Thus, the district court's failure to instruct the jury on the lesser-included offense was not fundamental error.

**{26}** Relying on *Boeglin*, Defendant also argues that the district court committed fundamental error and violated his right to due process because it did not require that Defendant give a knowing, intelligent, and voluntary waiver of the lesser-included instruction. *See* 1987-NMSC-002, ¶ 16 ("The record in this case clearly demonstrates that defendant knowingly, intelligently, and voluntarily waived his right to have the jury instructed on second[-]degree murder."). This Court previously addressed this issue in *State v. Archuleta*, 1989-NMCA-022, ¶ 5, 108 N.M. 397, 772 P.2d 1320 where we concluded that *Boeglin* did not require a waiver of applicable lesser-included instructions. *See id.* ("We do not read *Boeglin* as holding that [a] defendant has a right to waive a lesser included offense instruction but rather that he has the right to have a lesser included offense instruction given where the evidence supports it."). Therefore, we conclude that there was no fundamental error and Defendant was not deprived of due process under the circumstances.

## IV.     No Prima Facie Case of Ineffective Assistance of Counsel

**{27}** We next address Defendant's argument that he received ineffective assistance of counsel because his trial counsel: (1) did not seek the lesser-included offense of possession of paraphernalia; (2) failed to file a motion to suppress the evidence seized in the search of the red pouch based on a lack of probable cause; and (3) failed to admit photographs of window awnings on the Rescue Mission building that may have blocked the view of Officer Galvan.

**{28}** "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees defendants in criminal proceedings the right to effective assistance of counsel." *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "Our Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal." *Id.* ¶ 7. As such, this Court will remand for an evidentiary hearing only when the record on appeal supports a prima facie case of ineffective assistance of counsel. *See id.* ¶ 7. A prima facie case of ineffective assistance of counsel requires Defendant to establish that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *Id.* ¶ 9 (internal quotation marks and citation omitted).

**{29}** First, as noted above, the failure to seek the instruction on the lesser-included offense of drug paraphernalia could very well have been a tactical decision by Defendant's trial counsel. For the same reasons discussed above, we conclude, based on the record before us, that Defendant has not made a prima facie case for ineffective assistance of counsel as to this claim.

**{30}** Second, Defendant argues that the arresting officers lacked probable cause to arrest and subsequently search the red pouch based only on Officer Galvan's observations. Therefore, Defendant argues that his trial counsel should have moved to suppress the evidence obtained in the search incident to his arrest. When evaluating

the reasonableness prong of an ineffective assistance of counsel claim premised on counsel's failure to file a motion to suppress evidence, "[a d]efendant must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *State v. Mosley*, 2014-NMCA-094, ¶ 20, 335 P.3d 244 (internal quotation marks and citation omitted). "A warrantless arrest is valid where the officer ha[d] probable cause to believe that a crime has been committed by the person whom he [or she] arrests." *State v. Jones*, 1981-NMSC-013, ¶ 7, 96 N.M. 14, 627 P.2d 409. Probable cause exists when "facts and circumstances within the officer's knowledge, or about which the officer has reasonably trustworthy information, are sufficient to warrant an officer of reasonable caution to believe that an offense is being committed or has been committed." *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446.

**{31}** Contrary to Defendant's assertion, probable cause existed when Officer Galvan witnessed Defendant produce the pipe, smoke it in a manner that a crack cocaine pipe is traditionally smoked, and do so within fifteen feet of his location. At a minimum, Officer Galvan had probable cause to arrest Defendant for possession of drug paraphernalia at the time he saw him with a crack cocaine pipe. *See State v. Ochoa*, 2008-NMSC-023, ¶ 11, 143 N.M. 749, 182 P.3d 130 ("[W]arrantless misdemeanor arrests [are permitted] if the officer has probable cause to believe that a misdemeanor was committed in the officer's presence."). This would justify a search of the red pouch based on a search incident to that arrest. *See State v. Paananen*, 2015-NMSC-031, ¶¶ 4, 31, 357 P.3d 958 (holding that it was a reasonable warrantless search incident to arrest for an officer to open a cigarette package belonging to the defendant that had been placed on a nearby table after officers had placed the defendant under arrest). A reasonably competent attorney could have decided a motion to suppress the evidence was unwarranted.

**{32}** Lastly, Defendant claims trial counsel should have admitted photographs of window awnings from the Rescue Mission to establish that Officer Galvan did not have a clear view of Defendant and Valdez. Officer Galvan testified that the building did have window awnings, but they did not obstruct his view of Defendant and Valdez. Defendant presented no evidence at trial establishing the contrary. As such, a reasonably competent attorney would not seek to admit photographs that would not refute Officer Galvan's testimony. Therefore, as to all three contentions, we hold Defendant has failed to demonstrate a prima facie case of ineffective assistance of counsel. Nonetheless, Defendant may still bring his claims through habeas corpus proceedings. *See State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

## V.   Defendant's Right to a Speedy Trial Was Not Violated

**{33}** The Sixth Amendment guarantees that in criminal cases "the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI; *see* N.M. Const. art. II § 14 ("[T]he accused shall have the right to . . . a speedy . . . trial."). "Speedy trial analysis

under the United States Constitution requires a balancing and weighing of several factors, including the length of delay, the cause of the delay, timely assertion of right, and prejudice to the accused." *State v. Spearman*, 2012-NMSC-023, ¶ 1, 283 P.3d 272. We determine whether Defendant's right to a speedy trial has been violated analyzing the particular facts of his case. *See id.* ¶ 16. "[W]e give deference to the district court's factual findings, but we review the weighing and the balancing of the [four factors] de novo. *Id.* ¶ 19 (alteration, internal quotation marks, and citation omitted).

## A.     Length of Delay

**{34}**    "The length of the delay is a two-fold inquiry. Initially, we determine whether the delay is presumptively prejudicial. If it is presumptively prejudicial, we balance the length of the delay against the remaining three factors to assess whether the constitution has been violated." *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591. The guidelines for determining whether a case is presumptively prejudicial depends on the complexity of the case—one year for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case. *State v. Garza*, 2009-NMSC-038, ¶ 2 146 N.M. 499, 212 P.3d 387. The district court categorized this as a simple case and thus a twelve-month delay would be presumptively prejudicial. *See State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135 ("We defer to the district court's finding on the question of complexity when it is supported by substantial evidence." (internal quotation marks and citation omitted)).

**{35}**    To determine the length of delay we must first identify the date that Defendant's right to speedy trial attached. "In general, the right attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (internal quotation marks and citation omitted). Defendant's right to a speedy trial attached on September 12, 2012, because he was released from custody after his arrest and was not held to answer until the time of the indictment. *See id.* ¶ 12 (holding that a defendant was not held to answer until the time of his indictment); *State v. Sanchez*, 1989-NMCA-001, ¶ 8, 108 N.M. 206, 769 P.2d 1297 (holding that "arrest alone, without posting bond, imposition of restrictive conditions of release, or being held to answer for unresolved criminal charges does not trigger a defendant's speedy trial rights"). Between the date of Defendant's indictment on September 11, 2012, and the Defendant's trial setting on November 17, 2014, the case was pending approximately 26 months, which exceeds the 12-month threshold for a simple case. This demonstrates a presumptively prejudicial delay, requiring this Court to weigh and balance the four factors.

**{36}**    In determining the weight to be given to the length of delay, "the greater the delay[,] the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. Here, the delay is more than twice as long as the 12-month threshold and therefore this factor weighs heavily against the State. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing delay that was nearly twice the "[12]-month threshold for [a] simple case[,]" heavily against the state).

**B.      Reason for the Delay**

**{37}**   There are three types of delay that may be weighed against the State at varying levels: (1) deliberate attempts to delay the trial to thwart the defense weigh heavily against the State; (2) negligent or administrative delay weighs less heavily against the State; (3) delay that is justified by a valid reason is weighed neutrally. *Garza*, 2009-NMSC-038, ¶ 25. The reasons for the delay may heighten or temper the prejudice caused by the length of delay. *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121. While the district court did not evaluate the specific periods of delay, it concluded, "Defendant has largely contributed to, or been accountable for, the delay in bringing the case to trial." We agree.

**1.      Neutral Time Period**

**{38}**   Based on our review of the record, the initial period of delay commenced on September 11, 2012, when Defendant was indicted and ended when the case went into warrant status on May 17, 2013. During this time, the case appeared to be proceeding with customary promptness as counsel entered their appearances, Defendant was arraigned, witnesses were disclosed, discovery was exchanged, and witness interviews were being scheduled. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 (indicating that "where a case moves toward trial with customary promptness, the period of time is to be weighed neutrally between the parties" (internal quotation marks and citation omitted)). At the March 13, 2013, status conference, the parties agreed to reset the conference for a later date. Because the parties mutually agreed to the delay, we also cannot weigh this period against either side. *See State v. Mascarenas*, 1972-NMCA-106, ¶ 6, 84 N.M. 153, 500 P.2d 438 ("[W]here a defendant . . . consents to the delay, he may not complain of a denial of the right [to a speedy trial]."). For these reasons, we weigh this approximately 8-month period of delay neutrally.

**2.      Delay Attributed to Defendant**

**{39}**   The first period of delay attributed to Defendant began on May 17, 2013, when the district court issued a bench warrant because Defendant altogether stopped reporting to pretrial services, and ended on August 14, 2013. Defendant also failed to appear at the May 30, 2013 status conference. The case remained in warrant status until August 12, 2013, when Defendant was arrested on the warrant.

**{40}**   The second period of delay that weighs against Defendant arose from Defendant's request for a new attorney on October 16, 2013, to the status conference held on March 26, 2014. Defendant filed a motion indicating he no longer wanted representation by any attorney employed with the public defender's office, including his assigned public defender. Instead, he requested that the court appoint him contract counsel. *Cf. State v. Hernandez*, 1986-NMCA-040, ¶ 8, 104 N.M. 268, 720 P.2d 303 ("As a general rule, an indigent defendant has no right to choose or substitute his appointed counsel."). The supervisor for Defendant's public defender attended the

hearing and informed the district court that she was confident that Defendant was receiving effective assistance of counsel. Defendant asserted that he had "been sold out multiple times from [sic] the public defenders" and felt that "the public defender was not advocating for him to the best of his ability." The district court granted Defendant's request, ordered his assigned public defender to withdraw as counsel, and ordered that contract counsel be appointed. The district court did not determine that Defendant was receiving ineffective assistance of counsel or that his public defender was delaying or neglecting his case, rather, the district court stated that "there's an attorney/client breakdown." The district court cautioned Defendant that the court did not "want this to turn into . . . some sort of lawyer musical chairs," and stated that the court would not permit Defendant to change attorneys again. As a result, Defendant's public defender withdrew on October 21, 2013, and Defendant was assigned contract counsel, Leanne Kerr, who entered an appearance, filed a witness disclosure, and requested discovery almost a month later on November 14, 2013. Ms. Kerr only represented Defendant for a couple of months.

**{41}**   On January 3, 2014, another attorney, Matthew Huggins, filed an entry of appearance and a request for discovery on behalf of Defendant. Despite having filed an entry of appearance over a month prior, Defendant's new attorney indicated he had yet to meet with his client and requested that the district court reschedule the February 26, 2014 status conference. *See Ochoa*, 2017-NMSC-031, ¶ 18 ("[D]elay initiated by defense counsel generally weighs against the defendant."); *State v. Deans*, 2019-NMCA-015, ¶ 18, 435 P.3d 1280 (stating generally the defendant is held accountable for delays such as "stipulated continuances and removing defense counsel").

**{42}**   The final period of delay we attribute to Defendant is from May 16, 2014 to July 12, 2014 and one additional month from October 7, 2014 to November 17, 2014. Again, Defendant failed to comply with pretrial services and a warrant was issued on May 16, 2014. Because the case was in warrant status, the district court vacated the October trial setting. Defendant was arrested on the warrant on July 12, 2014. Defendant's non-appearance resulted in another six-week delay from October 7th to November 17, 2014. The total amount of delay attributed to Defendant was approximately eleven months.

### 3.   Delay Attributed to the State

**{43}**   The record is silent as to the cause of the delay during three periods: (1) August 13, 2013 to October 15, 2013; (2) March 27, 2014 to May 15, 2014; and (3) July 13, 2014 to October 6, 2014. The record is unclear as to how the State was fulfilling its obligation to progress this case forward during this time. Thus, this delay, which totals less than seven months, we deem negligent or administrative delay that weighs against the State.

**{44}**   In sum, the entire delay was approximately twenty-six months. The State was not responsible for most of this delay—with less than seven months of delay weighing against the State. The remaining delay weighed neutrally or was attributed to Defendant. Therefore, we do not weigh this factor against the State.

## C.      Assertion of the Right

**{45}**    In evaluating the third *Barker* factor we look to the "frequency and force" of the defendant's objections to the delay. *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). We assess the timing of Defendant's assertions of his right to a speedy trial, the manner in which Defendant asserted the right and his actions with regard to the delay. *See id.* We afford "relatively little weight" to pro forma assertions. *See Urban*, 2004-NMSC-007, ¶ 16. A motion to dismiss on speedy trial grounds is an assertion of the right that is weighed against the State, although not heavily. *State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103.

**{46}**    Defendant made several verbal and written assertions of his right to a speedy trial. Defendant verbally asserted his right to a speedy trial at his initial arraignment and at three different hearings between March 2013 and November 2014. In addition, Defendant made pro forma assertions in entry of appearances filed by his attorneys. On the eve of trial, Defendant filed his motion to dismiss on speedy trial grounds. This Court will afford less weight to a motion to dismiss on speedy trial grounds if it is filed relatively close to the scheduled trial. *See Gallegos*, 2016-NMCA-076, ¶ 25 (holding that filing a motion to dismiss on speedy trial grounds six weeks before trial is given less weight in a speedy trial analysis than if the motion was filed earlier).

**{47}**    While Defendant may have made numerous assertions requesting a speedy trial, his actions were to the contrary. Despite these requests, Defendant failed to appear in court on one occasion and failed to report to pre-trial services on other occasions, which resulted in delaying the trial in this case. Additionally, Defendant acquiesced in or requested rescheduling of status conferences. Accordingly, we weigh this factor only slightly in Defendant's favor. *See State v. Samora*, 2016-NMSC-031, ¶ 20, 387 P.3d 230 ("Defendant's assertions of the right were mitigated by his acquiescence to, and responsibility for, numerous delays.").

## D.      Prejudice

**{48}**    Defendant argues that he was prejudiced based on the time he spent incarcerated, a period that included time incarcerated on a no-bond hold. The district court agreed that the length of Defendant's incarceration "has caused him prejudice," but did not make a specific finding as to whether there was particularized prejudice in this case.

**{49}**    "The heart of the right to speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. In analyzing whether the Defendant was prejudiced we consider whether there was (1) oppressive pretrial incarceration (2) anxiety and concern of the accused and (3) impairment of Defendant's defense. *Id.* ¶ 35. Defendant only argues prejudice based on the time he spent incarcerated and thus, we need not address the other two factors in analyzing prejudice.

**{50}** "The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). Because some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial, a defendant must make a "particularized showing" that the pre-trial incarceration is undue. *Id.* Without such a showing, we will not speculate as to the impact of pretrial incarceration on Defendant. *Garza*, 2009-NMSC-038, ¶ 35.

**{51}** Here, Defendant failed to "offer proof in the form of affidavits, testimony, or other documentation to support his prejudice claim[,]" which requires us "to assess the prejudice factor with little assistance from [the d]efendant." *Ochoa*, 2017-NMSC-031, ¶ 49; *but see State v. Salazar*, 2018-NMCA-030, ¶ 28, __ P.3d __ ("[A]lthough [the d]efendant may have experienced some anxiety and concern as a result of his pretrial incarceration, he has made no showing that such anxiety or concern was undue beyond bare allegations."), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36939, Apr. 13, 2018). Instead, Defendant relies exclusively on what the district court found to be sixteen months of non-continuous incarceration. The primary reason the district court continued remanding Defendant into custody was a result of his own misconduct—repeatedly violating conditions of release, failing to report to pretrial services, and failing to appear to court. Absent any other proof of particularized prejudice, we decline to weigh this factor in Defendant's favor. *See Ochoa*, 2017-NMSC-031, ¶¶ 3, 60 (noting the defendant suffered "some prejudice" as a result of two years of continuous pretrial incarceration, but concluding that "absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration"); *Deans*, 2019-NMCA-015, ¶ 26 (declining to weigh the prejudice factor in a defendant's favor based on a lack of particularized showing of prejudice and the benefit defendant received from the delay due to a change in the law).

## E.     Balancing the Factors

**{52}** In balancing the four factors, "no one factor is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* ¶ 27 (internal quotation marks and citation omitted). We weigh the length of delay heavily in Defendant's favor, the reasons for the delay against Defendant, the assertion of the right slightly in Defendant's favor, and we decline to weigh the prejudice factor in Defendant's favor based on the lack of particularized prejudice. Having weighed the four factors, we conclude that the State did not violate Defendant's right to a speedy trial.

## CONCLUSION

**{53}** For the aforementioned reasons, we reverse and remand to the district court for it to enter an order vacating Defendant's conviction for conspiracy to commit possession of a controlled substance. We otherwise affirm.

**{54}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**I CONCUR:**

**LINDA M. VANZI, Judge**

**KRISTINA BOGARDUS, Judge (specially concurring).**

**BOGARDUS, Judge (specially concurring).**

**{55}** I concur in the result reached by the majority. I write separately to express my concern that strict interpretation of Section 30-31-23(D)'s phrase "any amount of any controlled substance" leaves open the possibility that defendants are charged—and prosecuted—for possessing amounts of drugs detectable only through microscopic analysis or gas chromatography. It seems that plain-language analysis of this statute may not be appropriate given that our precedent has evolved to permit convictions for possession of increasingly trace amounts of controlled substances—not because of policy considerations, but because of technological improvements in forensic drug testing. I recognize that we are bound by precedent, *see Trujillo*, 1998-NMSC-031, ¶ 33, and thus concur in the result reached by the majority.

**{56}** Nevertheless, I suggest that this and similar cases would be more appropriately analyzed by adopting the approach in *Muqqddin*, 2012-NMSC-029. In *Muqqddin*, our Supreme Court cautioned against blurring "fine-line junctures" with an "ever-broadening" definition of burglary, especially where the criminal acts are "already punish[able] under our statutes as other, lesser crimes." *Id.* ¶ 50. Because Defendant's conduct in the instant case is already punishable by the crime of possession of drug paraphernalia, NMSA 1978, § 30-31-25.1 (2001), using *Muqqddin*'s approach to determine where the crime of possession of a controlled substance ends and the crime of possession of drug paraphernalia begins seems particularly appropriate. At the very least, I urge our Supreme Court and Legislature to review the applicable statute and its application, in light of the circumstances of this case.

**KRISTINA BOGARDUS, Judge**