This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37181

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ARTHUR SCOTT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jarod K. Hofacket, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant appeals his convictions, following a jury trial, of shooting at a dwelling, contrary to NMSA 1978, Section 30-3-8(A) (1993), and criminal damage to property over $1000, contrary to NMSA 1978, Section 30-15-1 (1963). We affirm Defendant's conviction for shooting at a dwelling. However, we reverse Defendant's conviction for criminal damage to property because the evidence was insufficient to show it was Defendant who caused damage to the property in excess of $1,000.

## BACKGROUND

**{2}** The following evidence was introduced at trial. Patricia Juarez, one of the victims, testified that Defendant and his live-in girlfriend, Audrey Fraley, were the only neighbors within miles of her household, which included her, her son, and her ex-boyfriend Daniel Gutierrez. Ms. Juarez testified that, on the day in question, she came home from work with her ten-year-old son at an unidentified time. She got ready to feed the livestock on the property and heard Defendant yelling at her. Ms. Juarez hid behind her garage and saw Defendant standing by her fence line. She testified that Defendant was yelling that she "was a coward" and that "he was going to come get [them]." Ms. Juarez went inside the house, locked the door, and got ready to cook. She sent her son out to the garage, where they keep their meat, and then she heard "a bunch of shots being fired." Fearing for her son's life, Ms. Juarez went outside to get her son and bring him inside. While outside, she saw that Mr. Gutierrez had pulled up to their house. She also "could still hear shots being fired [but] did not know where they were going or what was going on." She ran inside, got her son in a safe room, and called 911. While on the call with 911, Ms. Juarez stated that she began to hear the ping of shots actually hitting the house. Ms. Juarez did not see Defendant with a gun and did not know who was firing the gun.

**{3}** Mr. Gutierrez testified that he came home around 7:00 p.m. to find Ms. Juarez and her son unloading their vehicle, while Defendant and Ms. Fraley were "outside yelling and screaming." Mr. Gutierrez went inside his home to the restroom. As he was leaving the restroom, he heard gunshots and something hitting his house. Mr. Gutierrez went to the north window, where he could see the whole property, and could see and hear "them" shooting at his house. Mr. Gutierrez testified that he saw Ms. Fraley shooting the gun at his house first, while Defendant was yelling; and after she was done shooting, she handed the gun to Defendant and started yelling, and then Defendant started shooting.

**{4}** The prosecutor stopped this line of Mr. Gutierrez's testimony and told him to only talk about what Defendant did. The prosecutor, however, did not ask Mr. Gutierrez to clarify any statements he had made about the actions of Defendant and Ms. Fraley and did not elicit any further testimony about any other actions Defendant took without Ms. Fraley.

**{5}** The State then introduced a DVD containing a video recording Mr. Gutierrez had taken with his cell phone. Mr. Gutierrez prefaced the video by saying that the structure it depicts is Defendant's house and explained only that it was a video "of them shooting at us." The prosecutor did not elicit any testimony about when Mr. Gutierrez recorded the video. The video shows a house, quite a distance away, popping sounds, indistinct talking, and faint yelling, but the video does not show who was firing the gun. The prosecutor asked Mr. Gutierrez about the popping noise and who was yelling in the video but did not ask who was firing the gun. Mr. Gutierrez testified that the popping sounds were the gunshots, the louder popping sound was the one that hit his house, and Defendant was the one yelling in the video.

**{6}** The State also presented a number of photographs of firearms and ammunition that could have been used in the shooting, which were found during a search of the house shared by Defendant and Ms. Fraley. Sergeant Brookhouser, an investigating officer involved in executing the search warrant for the house, recounted a statement that Defendant made implicating both himself and Ms. Fraley. Sergeant Brookhouser testified that Defendant only acknowledged owning one .22 caliber firearm, a rifle. He further testified that after the investigators found a .22 caliber revolver, the one most consistent with the type of firearm investigators suspected was used in the shooting, Sergeant Brookhouser heard Defendant say, "They found the gun, now *we're* going to jail." (Emphasis added.)

## DISCUSSION

**{7}** Defendant contends that his conviction for shooting at a dwelling is not supported by substantial evidence. Defendant further contends his conviction for criminal damage to property over $1,000 fails on two grounds: the evidence that Defendant caused an amount of damage in excess of $1,000 was insufficient; and the evidence of the cost of the damage was insufficient to establish that it exceeded $1,000. Alternatively, Defendant argues that Mr. Gutierrez's lay opinion about the cost of damages to his house and car should have been excluded because the testimony lacked adequate foundation.

## I.      Standard of Review

**{8}** When assessing the sufficiency of the evidence, "we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). With this view, "[w]e then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted).

**{9}** "Although appellate courts are highly deferential to a jury's decisions, it is the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted). Proof of a fact may be based on reasonable inferences from the evidence, but it may not be based on pure speculation. *See id.* (explaining that "an inference must be linked to a fact in evidence" and "is more than a supposition or conjecture" (internal quotation marks and citation omitted)); *see also* UJI 14-6006 NMRA (explaining that a "verdict should not be based on speculation, guess[,] or conjecture"). " '[E]vidence from which a proposition can be derived only by speculation among equally plausible alternatives is not substantial evidence of the proposition.' " *State v. Stephenson*, 2017-NMSC-002, ¶ 26, 389 P.3d 272 (quoting *Slade*, 2014-NMCA-088, ¶ 14). Distinguishing between conclusions based on proper inferences and those based on mere speculation

can present difficulties. It requires us to determine whether a conclusion is properly reached based on a reasonably direct "rational and logical deduction from . . . the evidence" or whether a conclusion must be based "on a series of inferences" or on a logical inference that "must be buttressed by surmise and conjecture in order to convict." *Slade*, 2014-NMCA-088, ¶ 14 (internal quotation marks and citation omitted).

## II. Sufficient Evidence Supports Defendant's Conviction for Shooting at a Dwelling

**{10}** In arguing that insufficient evidence supports his conviction for shooting at a dwelling, Defendant relies on contrary evidence[1] that could support a different result. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)). However, under our standard of review, we resolve all conflicts in the evidence in favor of the verdict, we do not reweigh the evidence, and we will not substitute our judgment for that of the fact finder so long as sufficient evidence supports the result. *Id.* Viewing the evidence in this light, the trial testimony—particularly that of Mr. Gutierrez, who observed Defendant shooting a firearm at his house, and Sergeant Brookerhouser, who heard Defendant's incriminating statement—in addition to the physical evidence of relevant firearms and ammunition found in the home of Defendant and Ms. Fraley, supplies ample support for Defendant's conviction for shooting at a dwelling. *See* UJI 14-340 NMRA (identifying the essential elements of shooting at a dwelling). Accordingly, we affirm Defendant's conviction for shooting at a dwelling.

## III. There Is Insufficient Evidence to Sustain Defendant's Conviction for Damage to Property

**{11}** We now turn to review of the evidence presented to support Defendant's conviction for damage to the subject property in an amount more than $1,000. *See* UJI 14-501 NMRA (identifying the essential elements of criminal damage to property). The evidence presented established that two people, Defendant and his girlfriend, shot at the same house with the same gun, each for an indeterminate amount of time. The property damage caused in the incident consisted of four bullet holes in the siding of the victims' house, amounting to about $1,200 of damage, and one bullet hole in a door of Mr. Gutierrez's truck, which was by the house, amounting to about $200 to $300 of damage. Defendant was tried and convicted alone, and the State did not pursue a theory that Defendant aided and abetted Ms. Fraley or conspired with her.

**{12}** We agree with Defendant that the record does not provide support for a finding that Defendant's shooting of the firearm resulted in the specific damage alleged. There was no direct evidence identifying who shot and hit the house or the truck. Rather, the uncontradicted testimony of Mr. Gutierrez, the only person who saw who was shooting,

---

[1]Defendant argues that: the video does not show him shooting the gun; Mr. Gutierrez's description of the weapon used did not match any weapon found in the home; no tests were conducted on the firearms or bullets; no gunshot residue tests were conducted on him; and he was visibly intoxicated at the time.

established that both Defendant and Ms. Fraley were yelling and shooting a firearm at the house. Thus, we must look at the circumstantial evidence and draw inferences from that evidence to determine whether there was sufficient evidence to establish that Defendant caused all or some of the damage alleged. *See Montoya,* 2015-NMSC-010, ¶ 52 (explaining that we determine whether sufficient direct or circumstantial evidence supports every element of the offense, while "indulging all *reasonable* inferences and resolving all *conflicts* in the evidence in favor of the verdict" (emphases added) (internal quotation marks and citation omitted)).

{13}    Mr. Gutierrez's uncontradicted testimony established that he came home, went to the bathroom, and heard gunshots hitting the house as he was leaving the bathroom. He then ran to a window and saw Ms. Fraley shooting. Ms. Juarez's testimony established that she heard gunshots hitting the house after Mr. Gutierrez arrived at home and after she had gotten her son inside the house and was on the phone with 911. The relevant events that Ms. Juarez and Mr. Gutierrez testified to happened at about the same time, which suggests that they heard the shots hitting the house right before Mr. Gutierrez saw Ms. Fraley firing the gun. Their testimony supports a reasonable inference that Ms. Fraley fired the bullets that hit the house at that time. Regardless, there is no evidence from which we might reasonably infer it was Defendant shooting when either Mr. Gutierrez or Ms. Juarez heard what seems to be a series of gunshots that damaged their property. If we were to conclude that it was Defendant shooting during this time, we would have to do so on the basis of pure guesswork, rather than a rational, logical deduction from the evidence. *See Slade*, 2014-NMCA-088, ¶ 14 ("[I]t is the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." (internal quotation marks and citation omitted)).

{14}    The only other evidence presented to suggest when a bullet made contact with the house was Mr. Gutierrez's explanation that the loud popping sound that can be heard in the video was a bullet that hit the house. But, the State did not elicit any testimony indicating when Mr. Gutierrez took the recording or who was firing shots at that time. Indeed, Mr. Gutierrez prefaced introduction of the video by explaining that it was a video "of *them* shooting at us," (emphasis added) suggesting both Defendant and Ms. Fraley may have been shooting at the house during that time. Mr. Gutierrez's testimony was that Defendant and Ms. Fraley traded off yelling and shooting. We could reach the conclusion that it was Defendant who fired the shots that caused the damage "only by speculation among equally plausible alternatives[.]" *Stephenson*, 2017-NMSC-002, ¶ 26 (internal quotation marks and citation omitted).

{15}    Accordingly, because the evidence does not establish what damage Defendant caused, his conviction for criminal damage to property over $1,000 must be reversed. Furthermore, because we reverse this conviction on this ground, we need not reach Defendant's challenge to the sufficiency of the evidence of the cost of repair nor his challenge to the admission of the victim's lay opinion concerning the cost of damages.

**IV.    Conviction for the Lesser Included Offense of Misdemeanor Criminal Damage to Property Is Not Supported By Substantial Evidence**

**{16}**     We turn next to the question of whether Defendant may be convicted for the lesser included offense of misdemeanor criminal damage to property, on which the jury was also instructed. *See State v. Haynie*, 1994-NMSC-001, ¶ 4, 116 N.M. 746, 867 P.2d 416 ("[A]ppellate courts have the authority to remand a case for entry of judgment on the lesser included offense and resentencing rather than retrial when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense."); *see also State v. Villa*, 2004-NMSC-031, ¶ 9, 136 N.M. 367, 98 P.3d 1017 (holding that the *Haynie* rule only applies if the jury was instructed on the lesser included offense). As indicated above, the State did not elicit any testimony to indicate when or for how long either Defendant or Ms. Fraley were shooting at the house. Evidence of such timing, relative to when the victims heard shots hitting their property, could have provided proof from which we could infer that Defendant's shooting caused some of the damage. Also, there is an absence of evidence that Defendant fired more shots at the house or was shooting at the house for a longer period of time than Ms. Fraley. Thus, there is no evidence to suggest it was any more likely that Defendant was shooting the firearm when the victims heard the shots that damaged their property. As a result, only through conjecture could the jury have concluded that Defendant's shots caused any of the four bullet holes to the house or the one to the truck. We must resist the temptation to conclude that surely at least one of Defendant's shots caused at least one of the five bullet holes because we may not buttress permissible inferences with conjecture. *See Slade*, 2014-NMCA-088, ¶ 14.

**{17}**     The State's arguments in defense of the conviction are sparse and confused. It makes no attempt to identify the evidence that established Defendant caused the property damage totaling over $1,000. Instead, the State asserts that Defendant did not need to be the sole cause of the criminal damage to property exceeding $1,000 and appears to argue that Ms. Fraley's involvement is irrelevant. The State makes a seemingly inconsistent argument that seeks to incorporate Ms. Fraley's involvement into Defendant's actions and refers to Ms. Fraley as a "co-Defendant." Ms. Fraley, however, was not a co-defendant and was not referenced at all in the jury instructions.

**{18}**     Despite the State's various attempts at trial and on appeal to avoid Ms. Fraley's involvement, we cannot ignore the uncontradicted testimony that Ms. Fraley and Defendant took turns shooting at the house with the same gun. Nor can we ignore that the State chose not to seek an accessory liability instruction. While we offer no opinion on whether we would have found sufficient evidence had the jury received an instruction on accomplice liability, we note that we would have measured the evidence against such an instruction. *See State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 7, 409 P.3d 992 ("Where the [s]tate's theory of the case includes accomplice liability, the jury is accordingly instructed, and the sufficiency of the evidence is assessed against the jury instructions because they become law of the case." (alteration, internal quotation marks, and citation omitted)).

**{19}** The State frames the issue surrounding Defendant's actions as one of proximate cause, arguing that Defendant can be responsible for the damage caused because the damage was a foreseeable result of his actions. We are not persuaded that proximate cause plays a role in this case. Proximate cause and foreseeability are relevant where there are multiple causes of a harm, most often discussed in relation to a death. *See, e.g.*, *State v. Montoya*, 2003-NMSC-004, ¶ 19, 133 N.M. 84, 61 P.3d 793 ("In cases where death results from multiple causes, an individual may be a [proximate or] legal cause of death even though other significant causes significantly contributed to the cause of death."). Here, the damage to the property had a single cause—bullets. Given that Defendant was accused of having fired those bullets, the issue is not one of proximate cause and foreseeability, but of factual causation and identity—whether *he* shot the bullets that caused the damage. *See id.* ¶¶ 11, 19 (observing that even where proximate or legal causation of a crime is an issue, the state must also show but-for or factual causation—i.e., proof that the defendant's act factually played any role in the harm alleged).

**{20}** Because the State's theory, as set forth in the jury instructions, was that Defendant caused damage in excess of $1,000, it was the State's burden to prove it, but it failed to do so. Further, because we cannot determine that Defendant's actions caused any of the damage without improper guesswork, we cannot remand for entry of judgment on the lesser included offense of misdemeanor criminal damage to property. *See Haynie*, 1994-NMSC-001, ¶ 4 (permitting remand for judgment on the lesser included offense where "the elements of the lesser offense necessarily were proven to a jury beyond a reasonable doubt in the course of convicting the defendant of the greater offense"); *Slade*, 2014-NMCA-088, ¶ 14.

**CONCLUSION**

**{21}** Based on the foregoing, we affirm Defendant's conviction for shooting at a dwelling and reverse Defendant's conviction for criminal damage to property over $1,000.

**{22}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**