**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Roland E. ANDERSON,**
**Defendant-Appellant.**

No. 83–1837.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1984.
Decided July 25, 1984.

William R. Coulson, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

William Theis, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, and PELL and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Appellant Roland Anderson was convicted of bank robbery. On appeal he contends that the district court (1) should have suppressed as evidence hair samples taken from his scalp and beard and the expert testimony based upon the samples, (2) should have given the jury his tendered instruction on witness identification testimony and (3) should have permitted him to cross-examine the government's chief witness regarding his possible hopes for leniency on certain charges pending against him.

I

After Anderson's indictment and before trial, the government sought to obtain samples of Anderson's hair. The district court denied the government's motion for a court order directing Anderson to submit to the taking of hair samples, but, in accord with the district court's suggestion, the government then sought and obtained a search warrant requiring Anderson to submit to the taking of hair samples from his scalp and beard. The search warrant was executed in a doctor's office at the Metropolitan Correctional Center in Chicago, and Anderson's lawyer was present. The hair samples obtained were introduced at trial, and a government expert witness testified that his comparison of Anderson's hair with hair taken from clothing found in the getaway car showed that the hair in the clothing might have been Anderson's. On appeal, Anderson argues that the search warrant was defective and that the hair samples and expert testimony should not have been admitted.

The government argues as a preliminary matter that there is no need for this court to examine the validity of the search warrant because the involuntary taking of hair samples is not a search or seizure subject to the fourth amendment. According to the government, the district court erred by requiring a search warrant because the

FBI agents would have been entitled to cut samples of Anderson's hair without a warrant or any other order from the district court.[1] In response, the defendant argues that because the involuntary taking of hair samples is an intrusion on one's body, it is clearly a search subject to the fourth amendment.

Whether the involuntary removal of a person's hair constitutes a search or seizure of the person under the fourth amendment has been the subject of controversy in the federal courts. See In re Grand Jury Proceedings (Mills), 686 F.2d 135, 137–39 (3d Cir.1982) (involuntary removal of hair above the skin surface held not to be search of person); id. at 141–43 (Gibbons, J., concurring) (involuntary removal of hair is search and seizure of person). See also Bouse v. Bussey, 573 F.2d 548, 550 (9th Cir.1977) (allegation of forcible plucking of pubic hair stated claim for violation of constitutional rights); United States v. D'Amico, 408 F.2d 331 (2d Cir.1969) (removal of a few strands of hair was "unquestionably" a seizure but was not unreasonable); United States v. Weir, 657 F.2d 1005 (8th Cir.1981) (combing and plucking of hair was search and seizure but intrusion was so minor that fourth amendment rights were not implicated). Compare Cupp v. Murphy, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973) (involuntary scraping of fingernails is search of person), and Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966) (involuntary removal of blood samples is search of person), with United States v. Dionisio, 410 U.S. 1, 14–15, 93 S.Ct. 764, 771–772, 35 L.Ed.2d 67 (1973) (requiring grand jury witness to provide voice exemplar for grand jury's observa-

tion is not search of person), and United States v. Mara, 410 U.S. 19, 21, 93 S.Ct. 774, 775, 35 L.Ed.2d 99 (1973) (requiring grand jury witness to provide handwriting exemplars for grand jury's observation is not a search of person). We need not decide the broader issue in this case because the government obtained, at the district court's suggestion, a search warrant for taking the hair samples. Assuming, without deciding, that the involuntary removal of hair samples does constitute a search of the person, it is clear that the samples taken here pass muster under the strictest fourth amendment standards.[2]

■ There is no challenge to the reasonableness of the manner in which the samples were taken, and although appellant challenges the search warrant, the warrant was valid. The affidavit of the FBI investigating agent stated that hairs had been removed from the clothing worn by the men who robbed the bank. The affidavit also stated that Anderson had been indicted for the robbery, and the indictment was attached to the affidavit. The appellant argues that the affidavit did not adequately establish a connection between the hairs found in the clothing and his alleged participation in the robbery. However, the indictment demonstrated probable cause to believe that Anderson participated in the robbery, and the affidavit showed that the hairs in the clothing probably came from one or more of the robbers. The magistrate could therefore conclude that there was probable cause to support the search. See United States v. Collins, 559 F.2d 561, 564–65 (9th Cir.1977) (affidavit linked defendant to clothing and clothing to robbery). Under these circumstances, the in-

1. It should, of course, be clear that law enforcement officials may not force someone to submit to hair sampling unless that person is first lawfully within the control of the government through, for example, a lawful arrest, a grand jury subpoena or the execution of a search warrant. See United States v. Dionisio, 410 U.S. 1, 8, 93 S.Ct. 764, 768, 35 L.Ed.2d 67 (1973) (grand jury subpoena of voice exemplar). In Dionisio the Court employed a two-step analysis, deciding first that requiring compliance with a grand jury subpoena was not a "seizure" of the person

in fourth amendment terms, and analyzing second whether requiring someone to provide a voice exemplar was a "search" of the person. In the present case, Anderson was in lawful government custody at the time the government sought and obtained the hair samples.

2. We also do not decide here whether, assuming the fourth amendment applies, a search warrant was needed or whether instead some other court order would be sufficient.

voluntary taking of hair samples was permissible under the fourth amendment, and Anderson's motion to suppress was properly denied.

## II

The defendant also argues that the district court erred by failing to give the jury his requested instruction on witness identification of the defendant. The defendant's

**3.** The text of the *Telfaire* model instruction is as follows:

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing [sic] identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.] *

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed

tendered instruction was taken from the appendix to the court's opinion in *United States v. Telfaire*, 469 F.2d 552, 558 (D.C. Cir.1972).[3] The district judge refused to give defendant's *Telfaire* instruction and instead gave an instruction modeled on the witness identification pattern instruction drafted by the Committee on Federal Criminal Jury Instructions of the Seventh Circuit.[4] Eyewitness identification testimony

between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

[ (3) You make [sic] take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

* Sentence in brackets ( [ ] ) to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions.

469 F.2d at 558–59.

**4.** The text of the committee's pattern instruction 3.06 follows:

The reliability of eyewitness identification has been raised as an issue in this case and deserves your attention. Identification testimony is an expression of belief or impression by the witness. Its value depends upon the opportunity the witness had to observe the offender at the time of the offense and later to make a reliable identification, and upon the influences and circumstances under which the witness made the identification.

You must consider the credibility of each identification witness in the same way as any

was a vital part of the government's case against Anderson, and the trial took place nearly three years after the bank robbery. The eyewitnesses who testified had all had difficulties shortly after the robbery in describing the robbers and recognizing photographs.

■ In cases where witness identification is an issue, the trial judge must, at the defendant's request, instruct the jury about eyewitness identification testimony. *United States v. Hodges*, 515 F.2d 650, 653 (7th Cir.1975). In *Hodges* the trial judge had refused to give a tendered identification instruction although identification was a central issue in the case. This court held that the trial court must, in these circumstances, give an identification instruction at the defendant's request. Cross-examination and counsel's arguments were, in the absence of a court instruction on identification, not adequate "to focus the jury's attention on the issue of identify." 515 F.2d at 653. We said that the *Telfaire* instruction is an "appropriate" model, but we declined to require that it be given verbatim. We noted that we would "view with grave concern the failure to give the substantial equivalent" of a *Telfaire* instruction. *Id.*

The issue here is whether the pattern instruction is the "substantial equivalent" of the *Telfaire* instruction. The *Telfaire* model and the instruction given in this case differ primarily in the extent to which they specify particular influences on the reliability of witness identifications. Both instructions are designed to focus the jury's attention on the reliability of witness identifications and to acquaint the jury with factors

relevant in evaluating those identifications. Both instructions tell the jury to weigh the testimony based on the opportunity the witness had to observe the offender at the time of the offense, the ability of the witness to make reliable identifications at later times, and the circumstances of the later identifications.[5] The defendant argues that the pattern instruction is inadequate because the judge should spell out with greater particularity those factors which affect the witness's opportunity to observe the offender at the time of the offense and the reliability of subsequent identifications. The government contends that the pattern instruction is proper because it is not as complicated and argumentative as the *Telfaire* instruction. According to the government, the pattern instruction adequately directs the jury's attention to the relevant factors, and counsel may then develop the relevant details in cross-examination and closing argument.

■ In our view, the requirements of *United States v. Hodges, supra,* are met when the trial judge calls the jury's attention to the importance of the opportunity the witness had to observe the offender at the time of the offense, the ability of the witness to make subsequent identifications and the circumstances of those later identifications. The pattern instruction given here suffices. The pattern instruction is, in this respect, the "substantial equivalent" of the *Telfaire* instruction. *See United States v. Hodges, supra,* 515 F.2d at 653. Counsel may develop the relevant details through cross-examination and argument.[6]

other witness. Consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation of the matter covered in his testimony.

The government has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime. In this case the written jury instructions included the pattern instruction verbatim. The oral version included several minor explanatory interjections.

5. Both the *Telfaire* instruction and the instruction given in this case stress that the government has the burden of proving beyond a reasonable doubt that the defendant is the person

who committed the crime. Both instructions also state that the more general factors regarding credibility—the witness's truthfulness and the capacity and opportunity to observe events—also apply to identification testimony. There is no challenge here to these aspects of the instruction.

6. As noted, the *Telfaire* and pattern instructions differ primarily in the extent to which they identify and discuss the numerous factors which may influence the reliability of an identification. As is true in most jury instruction matters, the district courts retain broad discretion in framing jury instructions which will be most

III

■ Anderson also argues that the district court improperly limited cross-examination of the government's chief witness, Andrew Ford, regarding his possible hopes for leniency on Indiana drug and weapons charges pending against him. Ford was cross-examined on a variety of grounds relevant to bad character and bias, including his prior convictions and arrests and his guilty plea in this case. Cross-examination of Ford brought out his arrest on the Indiana drug and weapons charges, but *voir dire* did not establish the necessary foundation for inquiring into Ford's possible hopes for leniency on those charges. *See United States v. West*, 670 F.2d 675, 683 (7th Cir.), *cert. denied sub nom. King v. United States*, 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *United States v. De-Leon*, 498 F.2d 1327, 1332–33 (7th Cir. 1974). The *voir dire* disclosed that the federal government was aware of the state charges and that the charges had been pending for several years while Ford had been in prison on another conviction. However, Ford testified on *voir dire* that he had *not* been promised leniency and that he expected to be prosecuted on the state charges. The foundation therefore lacked one element of the *DeLeon-West* test, the existence of promises not to prosecute. Also, defense counsel were able to impeach Ford on a number of grounds implicating bias and bad character. The jury had ample information "to make a discriminating appraisal of the witness's motives and bias." *United States v. De Gudino*, 722 F.2d 1351, 1354 (7th Cir.1983). The district court did not err by limiting further inquiry into the charges.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

helpful to juries in specific cases. If a district judge believes that a more detailed identification instruction would be helpful to a jury, the framing of the instruction is well within the judge's discretion. *See generally* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions §§ 15.18 and 15.19 (3d ed. 1977) (alternative identification instructions).