2004-NMSC-031

98 P.3d 1017

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Hector VILLA III, Defendant–Petitioner.**

No. 28,353.

Supreme Court of New Mexico.

Sept. 9, 2004.

Freedman, Boyd, Daniels, Hollander, Goldberg & Cline, P.A., John D. Cline, Zach-

ary A. Ives, Albuquerque, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Justice.

{1} A jury acquitted Defendant of forty-four out of fifty-two charges of violating the Water Quality Act ("WQA"). Defendant appealed his convictions of the remaining eight felony counts: five counts of knowingly discharging or knowingly causing or allowing another person to discharge a water contaminant in violation of a permit, contrary to NMSA 1978, § 74–6–10.2(A)(1) & (B) (1993); and three counts of knowingly failing or knowingly causing or allowing another person to fail to monitor, sample or report as required by a permit, contrary to Section 74–6–10.2(A)(4) & (B). The Court of Appeals found insufficient evidence to sustain the eight convictions because the permit at issue-the existence of which was an element of each offense-had expired. *State v. Villa,* 2003–NMCA–142, ¶ 10, 134 N.M. 679, 82 P.3d 46. We affirm the Court of Appeals' holding on this issue. The Court of Appeals, however, remanded to the district court to enter judgment and resentencing for eight counts of attempt to commit the offenses of which Defendant was convicted, even though he was not charged with attempt and the jury was not instructed regarding the crime of attempt. *Id.* ¶ 20. We reverse the Court of Appeals on this issue, because a conviction of an offense not presented to the jury would deprive the defendant of notice and an opportunity to defend against that charge and would be inconsistent with New Mexico law regarding jury instructions and preservation of error.

## I.  Factual and Procedural History

{2} The New Mexico Environment Department ("NMED") is the state executive agency charged with the administration and enforcement of the WQA. In November 1992, NMED issued a discharge permit ("DP–854") to Henry Medina, operator of a landfill southwest of Las Cruces. The approval letter, directed to Medina, stated NMED had approved DP–854 for a period of five years, pursuant to the governing statute. *See* NMSA 1978, § 74–6–5(H) (1999) (providing that "[p]ermits shall be issued for fixed terms not to exceed five years," with an exception not relevant to this case). At the time of the events at issue, Defendant was a consultant for Valley By–Products, Inc. ("VBP"), an animal-rendering plant located near El Paso, Texas, which had an arrangement with Medina allowing VBP to discharge its waste at Medina's landfill site.

{3} The Attorney General brought a grand jury indictment against Defendant, charging him with fifty-two counts of violating Section 74–6–10.2(A) on separate occasions between 1998 and 2000. Section 74–6–10.2(A) reads in relevant part:

A.  No person shall:

(1) discharge any water contaminant . . . *in violation of any condition of a permit* for the discharge from the federal environmental protection agency, the [water quality control] commission or a constituent agency designated by the commission; [1]

. . . .

(4) fail to monitor, sample or report *as required by a permit* issued pursuant to a state or federal law or regulation;

. . . .

(Emphasis added.) Section 74–6–10.2(B) articulates a mens rea element and states the penalty for conviction: "Any person who knowingly violates or knowingly causes or allows another person to violate Subsection A of this section is guilty of a fourth degree felony. . . ." The indictment did not charge Defendant with, and at trial the State did not prosecute Defendant for, *attempt* to violate Section 74–6–10.2(A)(1) or (A)(4).[2]

---

[1]  By statute, NMED is a "constituent agency" authorized to grant discharge permits under the WQA. *See* NMSA 1978, § 74–6–2(K)(1) (2003).

[2]  It is far from clear what conduct might constitute attempt to knowingly fail to monitor, sample, or report or attempt to knowingly allow another to fail to monitor, sample, or report. On its face, such conduct seems akin to civil negligence rather than criminal misconduct. However, because Defendant was not charged with attempt and the jury was not instructed on attempt, we decline to address (1) whether the crime of attempt is applicable to Section 74–6–

{4} With respect to the eight charges relevant to this appeal, the State's two theories were as follows: (1) on five separate occasions in August 1998, Defendant knowingly caused or allowed another person to discharge water contaminants at the landfill site operated by Medina in violation of DP–854, contrary to Section 74–6–10.2(A)(1); and (2) on three separate occasions between February 1999 and February 2000, Defendant knowingly caused or allowed Medina to fail to monitor, sample, or report water contaminants in violation of DP–854, contrary to Section 74–6–10.2(A)(4).

{5} At the close of the prosecution's case, Defendant moved for directed verdict of acquittal, arguing that DP–854 had expired in November 1997 and therefore the State lacked sufficient evidence as a matter of law on an essential element of each charge. The State argued in response that evidence had been admitted that the permit was in effect, including a letter addressed to Medina from NMED-a copy of which had been received by Defendant-erroneously stating that DP–854 was in effect until October 2000. Although NMED had corrected this error in numerous subsequent letters to Medina, there was no evidence at trial that Defendant was aware of these subsequent letters.

{6} Despite the permit technically having expired at the time of the conduct charged, the State argued that because Defendant subjectively believed the permit was valid, the State's charges under Section 74–6–10.2(A)(1) and (A)(4) remained viable. The trial court denied Defendant's motion for directed verdict on the basis that whether DP–854 was in effect at the time of the conduct charged was a question of fact for the jury. Accordingly, the district court instructed the jury that for each charge it must find that Defendant knowingly acted or failed to act "in violation of any condition of a permit issued by the New Mexico Environment Department, or the Environmental Protection Agency."

{7} The jury acquitted Defendant of forty-four of the fifty-two original charges. On appeal, the Court of Appeals reversed the eight remaining convictions, holding that insufficient evidence supported the verdicts because DP–854 was not in effect as a matter of law at the time of the conduct of which Defendant was convicted. *Villa*, 2003–NMCA–142, ¶ 10, 134 N.M. 679, 82 P.3d 46. The Court further held, however, that attempt to commit a violation of the WQA is a lesser-included offense and that the jury necessarily found Defendant guilty of attempt. *Id.* ¶ 18. Therefore, the Court of Appeals remanded to the trial court for entry of judgment of conviction and resentencing for attempt to commit each of the eight violations. *Id.* ¶ 20. Defendant appeals, arguing that remand for resentencing for a lesser-included offense should not be permitted where the jury was not instructed on that offense.

## II. Discussion

■ {8} The question presented is whether, following reversal of a conviction due to insufficient evidence, an appellate court may remand for entry of judgment of conviction and resentencing for a lesser-included offense, where the jury had not been instructed on that lesser offense at trial.[3] The Court of Appeals below answered in the affirmative and remanded for resentencing on the lesser-included offense of attempt to commit the eight violations of the WQA. *Villa*, 2003–NMCA–142, ¶ 45, 134 N.M. 679, 82 P.3d 46. The Court of Appeals held that an appellate court may remand for resentencing for a lesser offense on which the jury was not instructed, provided the following conditions are met: (1) there is a failure of proof of one element of the greater offense; (2) the evidence is sufficient to sustain all the elements of the lesser offense; (3) the lesser offense is included in the greater; and (4) no undue prejudice to the defendant would result. *Id.*

10.2(A)(1) or (A)(4); (2) whether attempt is a lesser-included offense under Section 74–6–10.2(A)(1) or (A)(4); or (3) whether Defendant's charged conduct in this case would have constituted attempt to violate either Section 74–6–10.2(A)(1) or (A)(4), had Defendant been charged with attempt.

**3.** Because we decide this case on the narrow basis of the inapplicability of the direct-remand rule, we assume without deciding that attempt to violate Section 74–6–10.2(A)(1) and (A)(4) are lesser-included offenses.

¶ 25; *see Allison v. United States,* 409 F.2d 445, 451 (D.C.Cir.1969).

{9} We have previously considered when it would be appropriate for an appellate court to remand a case for entry of judgment of conviction and resentencing for a lesser-included offense without a new trial. In *State v. Haynie,* 116 N.M. 746, 748, 867 P.2d 416, 418 (1994), this Court reversed the defendant's conviction of first-degree murder due to insufficient evidence and remanded for entry of judgment and resentencing for the lesser-included offense of second-degree murder. *Id.* In deciding whether direct remand is appropriate in these circumstances, we stated the inquiry is whether the interests of justice would be served by ordering a new trial. *Compare Haynie,* 116 N.M. at 748, 867 P.2d 416 (holding the interests of justice would not be served by remanding for new trial on the offense of second-degree murder), *with State v. Garcia,* 114 N.M. 269, 276, 837 P.2d 862, 869 (1992) (holding on rehearing that the interests of justice would be better served by remanding for new trial on the offenses of second-degree murder and voluntary manslaughter). Significantly, the trial courts in both *Haynie* and *Garcia* had instructed the jury on the lesser-included offenses at issue, and the defendant in *Haynie* had argued to the jury for conviction of the lesser offense rather than the greater. *See Haynie,* 116 N.M. at 748, 867 P.2d at 418; *Garcia,* 114 N.M. at 271, 837 P.2d at 864. Here, the parties did not request and the jury was not tendered an instruction on any lesser-included offenses. Because neither *Haynie* nor *Garcia* address the specific situation in which the jury was not instructed on the lesser-included offense, this is a case of first impression.

{10} In expanding the scope of the *Haynie* direct-remand rule in New Mexico, the Court of Appeals relied primarily on *Shields v. State,* 722 So.2d 584 (Miss.1998). In a series of earlier cases, the Mississippi Supreme Court had held that when a conviction of a greater offense is invalidated on appeal for insufficient evidence, no new trial is required, and the defendant may be remanded for sentencing upon the lesser-included offense. *Id.* at 585. In each of those previous cases, however, the jury had been instructed on the lesser-included offense at issue. The ques-

tion *Shields* addressed was whether Mississippi's direct-remand rule required the jury to have been instructed on the lesser-included offense. *Id.* at 586. The court held it did not and adopted the same test adopted by the Court of Appeals to determine whether direct remand is appropriate. *Id.* at 587; *see Villa,* 2003–NMCA–142, ¶ 25, 134 N.M. 679, 82 P.3d 46; *Allison,* 409 F.2d at 451.

{11} Defendant first argues that expanding the scope of the *Haynie* direct-remand rule would violate his Sixth Amendment right "to be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI; *see also* N.M. Const. art. II, § 14 ("In all criminal prosecutions, the accused shall have the right ... to demand the nature and cause of the accusation...."). In response, the State cites *State v. Gallegos,* 109 N.M. 55, 66, 781 P.2d 783, 794 (Ct.App. 1989), for the proposition that "[a] defendant is placed on notice of the potential for being charged with lesser included offenses of an offense charged in the indictment." In *Gallegos,* the Court of Appeals held the trial court properly allowed the State to amend the indictment to include a lesser-included offense and that the amended indictment did not prejudice the defendant. *Id.* There, however, the State moved to amend the indictment *pretrial,* a fact which sharply distinguishes that case from this one.

{12} Here, giving Defendant notice of the lesser-included offenses *after conviction* hardly provides Defendant with adequate notice of those charges. As we stated in *State v. Meadors,* 121 N.M. 38, 45, 908 P.2d 731, 738 (1995), in the context of our cognate approach to determining whether an offense is lesser included, "the defendant should be fully aware of the possible offenses for which he or she may face prosecution and should have ample opportunity to prepare a defense." We further emphasized that, when ruling on a motion by the State to instruct the jury on a lesser-included offense, the trial court should conduct an independent inquiry to determine whether the defendant has received constitutionally adequate notice of the lesser offense. *Id.* It would be inconsonant with *Meadors'* requirement of adequate pretrial notice to hold now that a defendant may

be convicted *post-trial* of a lesser-included offense where the defendant was not advised of the State's intention to seek that conviction.

{13} Even if we were to conclude that Defendant had adequate notice of lesser-included offenses, we would still face the problem of convicting Defendant on appeal of a charge he did not in fact defend at trial. Had the State at trial requested instructions on the lesser-included offenses and the trial court properly granted that request, the parties would have had a full and fair opportunity to marshal evidence and craft their argument to persuade the jury for or against the elements of those offenses.

{14} In this case the State and Defendant pursued an "all-or-nothing" trial strategy, in which neither party requested instructions on any lesser-included offenses. On appeal, we do not second-guess the tactical decisions of the litigants. *See State v. Boeglin*, 105 N.M. 247, 251, 731 P.2d 943, 947 (1987) ("[C]onsistent with the constitutional guarantees of a fair trial, the defendant in a first degree murder prosecution may take his chances with the jury by waiving instructions on lesser included offenses and cannot be heard to complain on appeal if he has gambled and lost."). Were we to adopt the State's position, "the [S]tate would have all the benefits and none of the risks of its trial strategy, while the accused would have all the risks and none of the protections." *State v. Myers*, 158 Wis.2d 356, 461 N.W.2d 777, 782 (1990). We believe that both parties are entitled to the benefits and should be liable for the risks of their respective trial strategies.

{15} We also conclude that adopting the expanded direct-remand rule is inconsistent with New Mexico law regarding jury instructions and preservation of error. Rule 5–608(D) NMRA 2004, governing the preservation of error in jury instructions, states: "[F]or the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, *a correct written instruction must be tendered before the jury is instructed.*" (Emphasis added.) The purpose of this language is "to allow the

court an opportunity to decide a question whose dimensions are not open to conjecture or after-the-fact interpretation." *Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992). Except in cases of fundamental error, *see State v. Garcia*, 19 N.M. 414, 421, 143 P. 1012, 1014–15 (1914), "[t]imely objections to improper instructions must be made or error, if any, will be regarded as waived in every case." *State v. Garcia*, 46 N.M. 302, 307, 128 P.2d 459, 462 (1942).

{16} Here, the State is in effect asking us to review for fundamental error its failure to request jury instructions that correctly conform to the evidence adduced at trial. Even if we were to review the State's claims for fundamental error, in order to establish such error the State would have the burden of showing that "some fundamental right has been invaded." *Garcia*, 19 N.M. at 421, 143 P. at 1015. The State has not shown that a fundamental right was invaded; rather, the State has demonstrated only that its trial strategy of forgoing any lesser-included instructions did not prevail.

{17} If the situation were reversed, and Defendant had made the strategic decision not to request jury instructions on lesser-included offenses, Defendant would not be entitled to request on appeal modification of the conviction of a greater offense to reflect a lesser-included offense. *See Boeglin*, 105 N.M. at 251, 731 P.2d at 947. The State, having made the strategic decision not to request jury instructions on the crimes of attempt to violate Section 74–6–10.2(A)(1) and (A)(4), may not complain on appeal that it was denied a fair opportunity to pursue those convictions.

{18} Indeed, counsel for NMED informed the Court of Appeals at oral argument that NMED had made known to the Attorney General before the prosecution began that DP–854 was not in effect during the relevant period. At that point, the State was free to amend its indictment under Rule 5–204(A) NMRA 2004 to charge Defendant with attempt, but elected not to do so. Even at the close of the State's case at trial, when Defendant moved for directed verdict of acquittal, the State could have requested a jury instruction on attempt under Rule 5–611(D)

NMRA 2004, but chose not to. As Judge Kennedy stated, "[t]he State caused its problem at trial by consciously, purposefully failing to preserve their right to have a lesser included offense considered." *Villa*, 2003–NMCA–142, ¶ 79, 134 N.M. 679, 82 P.3d 46 (Kennedy, J., concurring in part and dissenting in part) (emphasis omitted). Having decided to bring an indictment based on a permit the State knew had expired, and forgoing an opportunity to pursue the theory of attempt at trial, the State may not complain on appeal about the consequences of those decisions.

### III. Conclusion

{19} We affirm in part and reverse in part the opinion of the Court of Appeals and remand to the trial court for proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA and RICHARD C. BOSSON, Justices.