The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **June 26, 2023**

**No. A-1-CA-39198**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellant,

v.

**GERALD CHAVEZ,**

 Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl Francolini, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**BACA, Judge.**

{1}    The State appeals the district court's order quashing a search warrant and suppressing the evidence collected during its execution. The metropolitan (metro) court issued the warrant in a criminal case that was pending trial in the district court. In its order, the district court found the warrant to be invalid for three reasons: (1) the metro court lost jurisdiction over the case once the indictment was filed in district court and likewise lost jurisdiction to authorize a search warrant; (2) the State violated Defendant's due process rights by circumventing "traditional" motions practice to obtain body standards; and (3) the affidavit supporting the warrant omitted material facts. We hold that the district court erred in suppressing evidence obtained, pursuant to the search warrant under the facts and circumstances present in this case; therefore, we reverse and remand for proceedings consistent with this opinion.

**BACKGROUND**

{2}    On February 8, 2020, Defendant was charged in metro court with various crimes related to incidents that occurred on February 7, 2020. On February 10, 2020, the State searched Defendant's truck and seized a handgun and ammunition.

{3}    On February 24, 2020, the State presented the case to a grand jury, which indicted Defendant for (1) great bodily harm by vehicle (driving while under the

influence of intoxicating liquor or any drug), contrary to NMSA 1978, Section 66-8-101(B) (2016), or in the alternative, great bodily injury by vehicle (reckless driving), contrary to Section 66-8-101(B); (2) leaving the scene of an accident (great bodily harm or death), contrary to NMSA 1978, Section 66-7-201 (1989); (3) shooting at or from a motor vehicle (no great bodily harm or death) (firearm enhancement), contrary to NMSA 1978, Section 30-3-8(B) (1993), and NMSA 1978, Section 31-18-16 (1993, amended 2022); and (4) reckless driving, contrary to NMSA 1978, Section 66-8-113 (1987). As a result of the indictment, Defendant's case in metro court was closed and the charges proceeded in the district court.

{4}     On March 25, 2020, while the case was pending trial in district court, the State, through Detective Anthony Zambrano, obtained a search warrant from metro court authorizing the collection of a DNA sample and latent fingerprints from Defendant. The affidavit supporting this search warrant included details of the events leading to the incident that gave rise to the charges pending in the district court case. Although the affidavit did not indicate that Defendant had been indicted or that felony charges were pending against him in district court, the affidavit did indicate that the search warrant involving Defendant's truck had been filed in district court.

{5}     On April 7, 2020, Defendant moved the district court to quash this search warrant (motion to quash), claiming the warrant was issued in violation of Rule 5-211 NMRA. Defendant also alleged the metro court and district court "d[id] not

share concurrent jurisdiction over this matter," and accused the State of circumventing the "common practice" of moving for body standards, as well as concealing material facts: i.e., that Defendant had been charged and was not a "suspect," as the search warrant stated. The district court held a hearing on Defendant's motion on April 9, 2020. That same day, and prior to the district court deciding the motion, police obtained a third search warrant—also issued by the metro court—and collected a buccal swab and latent fingerprints from Defendant.

{6} After the hearing, the district court granted the motion to quash. First, the district court found that the metro court "lost jurisdiction over this case when the indictment was filed"; therefore, it "lacked jurisdiction to authorize a search warrant." The district court also found that this "backdoor" warrant violated Defendant's due process rights generally and that the State left out material facts from its affidavit: that Defendant had been indicted in district court.

{7} The State in turn filed a motion for reconsideration. The State specifically asked the district court to clarify whether its order quashing the State's second warrant also suppressed the evidence the State had already collected. The district court subsequently denied the State's motion for reconsideration, finding that the State violated Defendant's due process rights by circumventing "traditional" motions practice to obtain evidence and should have filed a motion for body standards, thereby providing Defendant an opportunity to respond and be heard. The

district court also clarified that the evidence acquired by the warrant would be suppressed. However, it noted the State could seek to obtain the evidence through a motion for body standards.

{8} The State now appeals the district court's order denying the motion for reconsideration, pursuant to NMSA 1978, § 39-3-3(B)(2) (1972), which gives the State the right to appeal the district court's order suppressing evidence.

**DISCUSSION**

{9} On appeal, the State argues: (1) its appeal is properly before this Court; and (2) the district court erred in granting Defendant's motion to quash. The district court quashed the search warrant and suppressed the evidence seized during its execution for the following reasons: (1) the metro court did not have jurisdiction to issue a search warrant for a defendant already facing charges in district court; (2) post-indictment warrants violate a criminal defendant's due process rights; and (3) law enforcement left out critical information from the warrant, amounting to a material omission from the affidavit.[1] Aside from challenging the district court's findings,

---

[1] Defendant also calls our attention to an observation the district court describes as "an aside" in its order: that allowing the State to seek a warrant after indictment would thwart the deadlines outlined in LR2-308 NMRA. Apart from calling our attention to this observation in the statement of facts section of his brief, Defendant does not further advance or develop this as an argument in support of affirming the district court's order. Therefore, we refrain from further addressing this point. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped

the State also argues that post-indictment warrants are lawful in New Mexico and that Federal Rule of Criminal Procedure (FRCP) 41 supports this argument. We address each of the State's arguments in turn.

**I.      The State's Interlocutory Appeal is Properly Before This Court**

{10}      As a preliminary matter, we first address Defendant's contention that this Court should dismiss the State's appeal because the State's failure to seek and obtain a prompt resolution of its motion to reconsider renders its appeal untimely. We disagree and explain.

{11}      Our review of the record reveals that the State sought a ruling from the district court, and, as Defendant himself notes, the State requested a setting for this motion two days after it filed the motion. Although the State did not provide the district court with a courtesy copy of its request for hearing, Defendant cites no authority to support his position that the failure to do so renders the State's appeal untimely. We, therefore, decline to consider this argument further. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M.

---

arguments); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review undeveloped arguments).

764, 676 P.2d 1329 (citation omitted). We now address the propriety of the State's appeal before this Court.

{12}   The State has a right to appeal orders suppressing or excluding evidence within ten days of such an order. Section 39-3-3(B)(2) provides, in pertinent part:

> In any criminal proceeding in district court, an appeal may be taken by the state to [our S]upreme court or [the C]ourt of [A]ppeals, . . . within ten days from *a decision or order of a district court suppressing or excluding evidence* or requiring the return of seized property, if the district attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

(Emphasis added.) In cases like this, where a motion to reconsider an order suppressing evidence has been filed, the State may appeal the order suppressing evidence within ten days of filing the order disposing of the motion to reconsider. *See State v. Suskiewich*, 2014-NMSC-040, ¶ 17, 339 P.3d 614 ("[A] motion to reconsider filed within the permissible appeal period suspends the finality of an appealable order or judgment and tolls the time to appeal until the district court has ruled on the motion."). Here, the State timely filed its notice of appeal within ten days of the district court's order on its motion for reconsideration: the order denying the motion for reconsideration was filed on July 27, 2020, and the State timely filed its notice of appeal three days later, on July 30, 2020. Therefore, the State's interlocutory appeal is properly before this Court.

{13} Even assuming, arguendo, that the order granting motion to quash was an order suppressing the State's evidence, this appeal is still properly before us. This is true because *Suskiewich* provides that "a motion to reconsider *filed* within the permissible [ten-day] appeal period suspends the finality of an appealable order or judgment and tolls the time to appeal until the district court has ruled on the motion." *Id.* ¶ 17 (emphasis added). Here, the State timely moved to reconsider on May 15, 2020, which was within ten days of May 7, 2020, the date the district court filed its order quashing the warrant. It then filed its notice of appeal on July 30, 2020, within ten days of the issuance of the district court's order denying the motion for reconsideration on July 27, 2020. We, therefore, hold that the State's appeal is properly before this court. Next, we address the legality of the district court's order.

**II.     The District Court Erred in Suppressing the State's Evidence and Denying the Motion for Reconsideration**

{14} The State contends that the district court erred by suppressing the DNA evidence it collected through the search warrant because the metro court "may issue a search warrant in relation to any felony offense, and nothing in New Mexico law prohibits the issuance or use of post-indictment search warrants." The circumstances of this case present us with a matter of first impression in New Mexico.

{15} In its order denying the State's motion for reconsideration, the district court clarified that it was suppressing the evidence obtained as a result of the search

7

warrant executed on April 15, 2020. Thus, we deem this order and its corresponding motion as an order suppressing evidence and a motion to suppress, respectively.

{16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (text only) (citation omitted). Findings of fact are reviewed "to determine if they are supported by substantial evidence, a determination of whether the evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Garnenez*, 2015-NMCA-022, ¶ 13, 344 P.3d 1054 (text only) (citation omitted). We review the district court's application of the law to the facts de novo. *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183.

{17} Here, the district court suppressed the evidence obtained through the search warrant because it found: (1) upon indictment, the metro court lost jurisdiction over the case; (2) the issuance of the warrant by the metro court violated Defendant's due process rights; and (3) the affidavit supporting the warrant was misleading because it omitted or mischaracterized certain facts. The State disputes these three findings and argues that post-indictment warrants are permissible in New Mexico and under Fed. R. Crim. P. 41. We address each of these arguments in turn.

**A.    Jurisdiction of the Metro Court**

{18} The district court found that the metro court "lost jurisdiction over this case when the indictment was filed and therefore [m]etro[] [c]ourt lacked jurisdiction to

authorize a search warrant in this case." In support of this finding, the district court cited *State v. Muise*, where this Court found that exclusive jurisdiction is acquired over felony and misdemeanor charges by the district court through the filing of a criminal information. *See* 1985-NMCA-090, ¶ 18, 103 N.M. 382, 707 P.2d 1192. As we explain below, *Muise* is distinguishable from this case, and the district court's reliance on it is misplaced.

{19} In *Muise*, the defendant was initially charged with felonies and misdemeanors in magistrate court. *Id.* ¶ 10. Like this case, the charges (felonies and misdemeanors) were subsequently set for trial in district court. *See id.* ¶ 11. On appeal, the defendant objected to the trial of the misdemeanor charges by the district court and claimed that the defendant had an absolute right to have those charges tried in magistrate court. *Id.* ¶ 14. We noted that "[b]oth the magistrate court and district court have original concurrent jurisdiction over [the] trial of misdemeanor charges," *id.* ¶ 16, but concluded, however, "[i]n furtherance of the interests of orderly procedure, judicial policy mandates against piecemeal prosecutions growing out of the same acts or incident," and once a defendant is charged in district court, the "identical charge or charges pending in a magistrate court should be abandoned." *Id.* ¶ 19.

{20} Consequently, we held that the defendant in *Muise* did not have a right to trial of the misdemeanor charges in magistrate court where the charges, although initially filed in magistrate court, were subsequently bound-over, transferred, or refiled in the

district court for trial. *See id.* ¶ 19. We did not reach any conclusions about whether the magistrate court lost jurisdiction to issue warrants in those circumstances. In fact, in *Muise*, we did not discuss warrants whatsoever, much less the loss of jurisdiction to issue them in circumstances like those present here. Therefore, *Muise* is inapplicable to and distinguishable from this case. We next discuss New Mexico's preference for search warrants, the applicable rules of procedure for application and issuance of search warrants, and whether any statutes, rules of procedure, or case law prohibit a magistrate or metro court from issuing search warrants for a defendant whose case is pending trial in a district court.

{21} In New Mexico, we encourage "police officers to procure a search warrant" because we have a "strong preference for searches conducted pursuant to a warrant." *State v. Gurule*, 2013-NMSC-025, ¶ 16, 303 P.3d 838 (text only) (citation omitted). The Fourth Amendment to the United States Constitution "protects individuals and their property from unreasonable searches and seizures by the government." *State v. Malloy*, 2001-NMCA-067, ¶ 8, 131 N.M. 222, 34 P.3d 611. "The warrant 'interjects a detached and neutral decision[-]maker between the police and the person to be searched.'" *Id.* ¶ 9 (quoting *State v. Gutierrez*, 1993-NMSC-062, ¶ 9, 116 N.M. 431, 863 P.2d 1052). Under our State and Federal Constitutions, a neutral magistrate must issue a warrant based on probable cause. *See* U.S. Const. amend. IV; N.M. Const. art. II, § 10. We are unaware of, and the parties have not informed us of a requirement

10

that the neutral magistrate must also have the authority to hear felony-level charges. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (noting that if no supportive authority is cited, "we assume no such authority exists").

{22}  Rule 7-208 NMRA codifies the procedural requirements for the issuance and execution of a search warrant by the metro court. "The rule provides who and what a warrant may be issued for." *Malloy*, 2001-NMCA-067, ¶ 10. Rule 7-208(A) provides that "[a] warrant may be issued by the court to search for and seize" a person or property. We have specified that a magistrate court may issue a search warrant when "sufficient facts are presented in a sworn affidavit to enable the magistrate to make an informed, deliberate, and independent determination that probable cause exists." *State v. Gonzales*, 2003-NMCA-008, ¶ 11, 133 N.M. 158, 61 P.3d 867, *abrogated on other grounds by State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M, 488, 212 P.3d 376.

{23}  No case or rule in New Mexico is directly on point to help guide us in resolving this issue. *See State v. Railey*, 1975-NMCA-019, ¶ 10, 87 N.M. 275, 532 P.2d 204 (providing guidance). In *Railey*, our Court decided whether the trial court erroneously admitted evidence seized through a tribal court search warrant. *See id.* ¶ 2. We held that "evidence seized pursuant to such a warrant [granted by a tribal court] is inadmissible at trial in a New Mexico court." *Id.* ¶ 10. We reached this conclusion because "there is nothing in either the [tribal court's] constitution or the

[tribal court law] and [o]rder [c]ode which authorizes the . . . [t]ribal [c]ourt to issue a search warrant." *Id.* Unlike the tribal court, however, Rule 7-208 gives the metro court the express authority to issue search warrants, provided certain conditions are met. *See, e.g.*, Rule 7-208(B) ("The warrant shall state the date and time it was issued by the judge and shall contain or have attached the sworn written statement of facts showing probable cause for its issuance and the name of any person whose sworn written statement has been taken in support of the warrant.").

{24}     Like the metro court, the district court's rule, Rule 5-211, authorizes the district court to issue search warrants. The district court's rule is substantially similar to Rule 7-208. Nothing in the plain language of either Rule 5-211 or Rule 7-208 divests the metro court of authority to issue search warrants in cases indicted or bound over to the district court for trial.

{25}     Moreover, neither this Court nor our Supreme Court has held that under the circumstances present here, the metro court loses jurisdiction or is otherwise prohibited from issuing search warrants. Thus, we hold that the district court erred when it concluded the metro court lacked the authority to issue the warrant under the facts of this case. Because of the lack of authority to the contrary, we conclude that the metro court does not lose the ability to issue a search warrant, even in felony-related matters.

12

**{26}** In support of its position the State directs us to *United States v. Sadlowski*, 948 F.3d 1200, 1203 (10th Cir. 2020), which we find persuasive. *See State v. Long*, 1996-NMCA-011, ¶ 7, 121 N.M. 333, 911 P.2d 227 (noting that we follow federal law only to the extent we find that law persuasive). In *Sadlowski*, the metro court issued a search warrant for the defendant's residence. 948 F.3d at 1202. Law enforcement found firearms and ammunition during the raid, and the defendant eventually pleaded guilty to being a felon in possession of a firearm in federal court. *See id.* at 1202-03. On appeal to the Tenth Circuit, the defendant argued that the metro court lacked jurisdiction to issue a felony-related search warrant—an argument similar to the argument before us today. *Id.* at 1202.

**{27}** The *Sadlowski* Court first clarified that "a court's authority to hear a case and a court's authority to issue a search warrant are two separate concepts." *See id.* at 1203 ("'The procuring of a search warrant . . . is not, in any sense, the commencement of a prosecution.'" (quoting *Bevington v. United States*, 35 F.2d 584, 584 (8th Cir. 1929). In reviewing Rule 7-208, the Tenth Circuit concluded that our metro court does not lack the authority to issue a felony-related search warrant simply because it lacks jurisdiction over the prosecution of felony cases. *Sadlowski*, 948 F.3d at 1203. *Sadlowski* supports our holding today: that the metro court can issue a search warrant, even if it does not have jurisdiction over a case. Indeed, as

the Tenth Circuit noted, "[A] court's authority to hear a case and a court's authority to issue a search warrant are two separate concepts." *Id.*

**B.      Post-Indictment Search Warrants Are Permissible in New Mexico**

**{28}**      Next, the State argues that post-indictment warrants are lawful in New Mexico and that Fed. R. Crim. P. 41 supports this argument. We conclude that post-indictment warrants are lawful in New Mexico, provided all other requirements for the issuance of a search warrant are met.

**{29}**      As noted above, Rule 7-208 codifies the procedural requirements for the issuance and execution of a search warrant by the metro court. Rule 5-211 is the district court equivalent of Rule 7-208. Nothing in the plain language of either Rule 5-211 or Rule 7-208 divests the metro court of its authority to issue search warrants in cases indicted or bound over to the district court for trial. Thus, due to the lack of authority to the contrary, the metro court can issue post-indictment warrants as nothing in these rules or New Mexico law divests the metro court of this authority.

**{30}**      Moreover, Rule 5-211 is substantially similar to FRCP 41, therefore, we may rely, as we have previously, on federal authority interpreting FRCP 41. *See Malloy*, 2001-NMCA-067, ¶ 11 ("Because Rule 41 of the Federal Rules of Criminal Procedure is similar to Rule 5-211, we find the federal authorities persuasive."). Rule 41(d)(1) states, "After receiving an affidavit or other information, a magistrate judge—or if authorized by Rule 41(b), a judge of a state court of record—must issue

the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device." Like Rules 5-211 and 7-208, the plain language of FRCP 41 does not limit a federal magistrate judge's ability to issue a search warrant at a specific time during litigation.

{31} In further support of its argument, the State points us to several cases that "permit" post-indictment search warrants, including *United States v. Anderson*, 739 F.2d 1254 (7th Cir. 1984). *Anderson* supports our holding today: that post-indictment warrants are lawful in New Mexico, provided all other requirements for the issuance of a search warrant are met. In *Anderson*, the reverse of the procedure used to obtain evidence in this case was followed. In *Anderson*,

> [a]fter . . . indictment and before trial, the government sought to obtain samples of [the defendant's] hair. The district court denied the government's motion for a court order directing [the defendant] to submit to the taking of hair samples, but, in accord with the district court's suggestion, the government then sought and obtained a search warrant requiring [the defendant] to submit to the taking of hair samples from his scalp and beard.

*Id.* at 1255. After his conviction for bank robbery, the defendant appealed to the United States Court of Appeals for the Seventh Circuit, arguing that the search warrant was defective because the affidavit for the warrant did not adequately establish a connection between hairs found on clothing at the scene and the defendant's alleged participation in the robbery. *See id.* at 1255-56.

15

**{32}** The Seventh Circuit held that the search warrant was valid, reasoning that the magistrate judge could have concluded from the affidavit that probable cause existed to support the search. *See id.* at 1256. Although the *Anderson* Court did not address or interpret FRCP 41, we observe that the Seventh Circuit never questioned the validity of this post-indictment warrant. *Anderson*, 739 F.2d. at 1255-57. In fact, the Seventh Circuit stated, "There is no challenge to the reasonableness of the manner in which the samples were taken, and although appellant challenges the search warrant, the warrant was valid." *Id.* at 1256. The Seventh Circuit proceeded as though there was nothing unusual about the procedure used to obtain the search warrant. What's more, neither the Seventh Circuit nor the parties suggested or argued that the search warrant was invalid because it was issued post-indictment. *Id.* Therefore, we conclude that Rule 7-208, which is substantially similar to FRCP 41, does not expressly limit the ability of the metro court to issue a post-indictment search warrant.

## C.    Due Process

**{33}** The district court also found, in part, that the warrant violated Defendant's due process rights generally under the Fifth and Fourteenth Amendments to the United States Constitution. The State disputes this finding as well. The district court,

16

without citing any authority in support of this conclusion,[2] found that "[h]ad the State filed a [m]otion for [b]ody [s]tandards, as is common practice, Defendant would have had his due process right to file a response, be heard and have the decision made by this Court." The district court further found that "[b]y circumventing motion practice to obtain this evidence, Defendant's constitutional right to due process has been violated." We disagree.

{34}     The right to be free from warrantless searches is governed by the Fourth Amendment to the United States Constitution, as well as Article II, Section 10 of the New Mexico Constitution. "[B]oth the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution express a clear preference in favor of the warrant process." *Williamson*, 2009-NMSC-039, ¶ 14.

{35}     On the other hand, the Due Process Clause protects against the "depriv[ation] of life, liberty, or property, without due process of law." U.S. Const. amend. V; U.S. Const. amend. XIV, § 1. The Due Process Clause has been interpreted to protect individuals against substantive and procedural due process violations. *See State v. Druktenis*, 2004-NMCA-032, ¶ 46, 135 N.M. 223, 86 P.3d 1050 (citing *United*

---

[2] We do note, however, that although the district court did not cite any authority in support of this specific finding, it did cite general authority describing what due process involves (notice and opportunity to be heard) from this Court and the United States Supreme Court, which we find inapplicable to these circumstances as stated below.

17

*States v. Salerno*, 481 U.S. 739, 746 (1987)). At the core of the Due Process Clause's protections is the "'right not to be convicted of a crime unless the state has proven the defendant's guilt beyond a reasonable doubt'" in a criminal case. *State v. Radosevich*, 2018-NMSC-028, ¶ 14, 419 P.3d 176 (quoting *State v. Brown*, 1996-NMSC-073, ¶ 31, 122 N.M. 724, 931 P.2d 69).

{36} While the Due Process Clause has been interpreted to encompass broad protections, as illustrated above, the Fourth Amendment governs the issuance and execution of a search warrant. Neither Defendant nor the district court cited any authority supporting their position that the application for a search warrant—an ex parte procedure—rather than filing a motion for body standards (which would have allowed Defendant to respond and be heard) violated Defendant's due process rights. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We know of no case or other authority where the Due Process Clause has been interpreted to apply to this process. The Due Process Clause does not guarantee protection against unreasonable searches or seizures; the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution do.

{37} The Fourth Amendment "was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in

18

criminal cases." *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975) (internal quotation marks omitted). In New Mexico, the affiant must meet specific constitutionally mandated requirements before a search warrant may be issued. First, the affiant must demonstrate to a neutral magistrate that there is "probable cause to believe that a crime is occurring or seizable evidence exists at a particular location." *Williamson*, 2009-NMSC-039, ¶ 14 (text only) (citation omitted). Second, "the affidavit must show: (1) that the items sought to be seized are evidence of crime; and (2) that the criminal evidence is located at the place to be searched." *State v. Evans*, 2009-NMSC-027, ¶ 11, 146 N.M. 319, 210 P.3d 216 (internal quotation marks and citation omitted). These requirements are incorporated in both the district and metro court rules. *See* Rule 7-208; Rule 5-211. Nothing in either the Fourth Amendment to the United States Constitution, Article II, Section 10 of the New Mexico Constitution, or the district or metro court rules provides a defendant with a right to notice or an opportunity to be heard before the issuance of a search warrant. If a defendant wishes to challenge the issuance of the warrant, the defendant can move to suppress or quash the warrant, thereby seeking to suppress or exclude the evidence seized after the warrant has been executed. *See* Rule 5-212(A) NMRA (stating that "[a] person aggrieved by a search and seizure may move for the return of the property and to suppress its use as evidence"); *see also* Rule 7-304(F) NMRA (the analogous rule in the metro court).

19

{38} What's more, the choice of the State to seek body standards from a person who is a defendant in a pending criminal prosecution via a search warrant rather than through a motion for body standards does not equate to a violation of the due process rights of that person simply because the State did not follow the "common practice" of the jurisdiction to seek body standards by way of a motion for such. *See State v. Villa*, 2004-NMSC-031, ¶ 14, 136 N.M. 367, 98 P.3d 1017 (noting that "we do not second-guess the tactical decisions of the litigants" on appeal). We also note that the district court cited no statute, case, or rule of procedure to support this proposition, and Defendant has not advanced a due process argument on appeal. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60 (noting that if no supportive authority is cited, "we assume no such authority exists").

{39} Thus, the district court erred in finding that the issuance of the post-indictment warrant violated Defendant's due process rights because due process does not protect individuals from a search warrant. On the contrary, the rights of a target of a search warrant are protected by the Fourth Amendment and Article II, Section 10— not the Due Process Clause.

**D.      The Omission**

{40} Finally, the district court found that permitting law enforcement to leave out critical information from the affidavit supporting the search warrant was a material omission, rendering the search warrant invalid. We disagree.

{41} "We review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785. "Findings of fact are reviewed to determine [whether] they are supported by substantial evidence." *Garnenez*, 2015-NMCA-022, ¶ 13. The application of the law to the facts is a legal determination, which we review de novo. *Id.*

{42} "[W]hen an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause." *Williamson*, 2009-NMSC-039, ¶ 30 (text only) (citation omitted). "'[T]o suppress evidence based on alleged falsehoods and omissions in a search warrant affidavit, the defendant must show either 'deliberate falsehood,' or 'reckless disregard for the truth,' as to a material fact. A merely material misrepresentation or omission is insufficient.'" *Garnenez*, 2015-NMCA-022, ¶ 14 (quoting *State v. Fernandez*, 1999-NMCA-128, ¶ 34, 128 N.M. 111, 990 P.2d 224). We also defer to the district court when it makes findings on the intent behind alleged falsehoods in an affidavit. *See id.*; *see also State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M., 592, 52 P.3d 964 ("[T]he district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses."). Accordingly, we must decide whether the State's characterization of

Defendant as a "suspect" and the omission of the pending felony case in the district court were "deliberate falsehood[s]," a "reckless disregard for the truth," or a "merely material misrepresentation" or falsehood. *Garnenez*, 2015-NMCA-022, ¶ 14 (internal quotation marks and citation omitted).

{43} The district court did not find that Defendant showed that the omission was a deliberate falsehood or reckless disregard for the truth, only that the omission was "deceptive." This is not the intent necessary to nullify a warrant. *See Garnenez*, 2015-NMCA-022, ¶ 14. Likewise, while the district court, in its first order, granted Defendant's motion to quash, in part, because the omission was "material," in its second order, the district court clarified that "[i]n this matter, clearly the issue is *not* materiality of the issues to the finding of probable cause. The issue in this matter is whether the State should be permitted to submit an affidavit for a warrant when the affidavit is deceptive and violates Defendant's due process rights." The district court's finding suggests that while the characterizations in the affidavit were misleading, they did not bear on facts material to the probable cause determination. We explain.

{44} The affiant for the search warrant was Detective Zambrano. In his affidavit, he stated that he sought to collect an oral swab and fingerprints from "suspect," Defendant. In the affidavit, Detective Zambrano outlined a brief statement of the facts as he understood them. Detective Zambrano stated that officers found

22

Defendant, read him his *Miranda* rights, and arrested him. Detective Zambrano also stated that he executed a search warrant on Defendant's truck and found a gun and that the warrant was immediately filed in district court. Importantly, Detective Zambrano sought this warrant more than a month after the initial warrant was executed.

{45} Based on our review of the affidavit and the record, we conclude that none of the statements in Detective Zambrano's affidavit identifying Defendant as a suspect were reckless or deliberate. The characterization of Defendant as a "suspect" instead of a "defendant" and the omission from the affidavit of the pending charges against Defendant did not affect the material facts establishing probable cause in support of the issuance of the search warrant. Characterizing Defendant as a "defendant" rather than a "suspect" would add nothing of any consequence to the affidavit. It may have alerted the reviewing magistrate that the target of the warrant was already being prosecuted for a crime and nothing more. Without additional detail about the case pending against the target being in the affidavit, the reviewing judge would be unable to deduce anything more from his reading of it. The same is true for the omission from the affidavit that Defendant was being prosecuted for charges related to items being sought for seizure by the warrant. Therefore, we cannot conclude, as a matter of law, that the omission of the pending prosecution and the characterization of Defendant as a suspect were reckless or deliberate. *See id.*

{46}     The State characterizing Defendant as a "suspect" is not wrong; he *was* a suspect. Defendant was also a criminal defendant indicted on felony charges in district court. These two statements are not mutually exclusive or misleading enough to meet the deliberate falsehood standard. Further, the reviewing judge could have reasonably inferred that Defendant was facing felony-level charges from the affidavit. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 ("A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." (alterations, internal quotation marks, and citation omitted)). First, the affidavit states that the original warrant was filed in district court immediately after it was executed. Second, the affidavit states that Defendant was seen shooting from his truck at another vehicle. From this, we do not believe that the affidavit was so insufficient that the reviewing judge could not independently pass judgment on the existence of probable cause, as required by the Constitution. *See Williamson*, 2009-NMSC-039, ¶ 30 (stating that "the affidavit must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause" (internal quotation marks and citation omitted)).

{47}     On appeal, "we do not second-guess the tactical decisions of the litigants." *Villa*, 2004-NMSC-031, ¶ 14. Here, the State could have sought a motion for bodily standards, as the district court stated, but they were not required to do so. We

24

conclude, therefore, that the district court's decision to suppress the State's evidence obtained through a valid search warrant was erroneous.

**CONCLUSION**

{48}    For the reasons stated above, we reverse the district court's order granting Defendant's motion to quash, the order denying the State's motion for reconsideration and suppression of any evidence obtained as a result of the execution of the warrant, and remand for proceedings consistent with this opinion.

{49}    **IT IS SO ORDERED.**

_____

**GERALD E. BACA, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**MEGAN P. DUFFY, Judge**